## BYRNES vs. CLARK.

*January 12 — January 30, 1883.*

*(1) Evidence: failure to object to competency of witness. (2) Parent and child: contract to pay for services. (3) Consideration for conveyance of land: good faith.*

1. An action against A. was, by stipulation, determined upon the evidence taken in an action against B. in which A.'s wife had testified on behalf of the defendant. No objection to her competency as a witness was made in either action. *Held,* that the admission of her evidence in the action against A. was not error.

2. There is no implied contract on the part of a father to pay wages to his child who remains with him and renders him services after becoming of age. To recover, in such a case, the child must show an express contract by the father to pay such wages, either by direct and positive evidence of the fact, or by circumstantial evidence equivalent to direct and positive. But it is not essential that the rate of wages or the time of payment be agreed upon. If there is an express contract to pay for the services, the child becomes, in respect thereto, the servant of his father and may recover *quantum meruit.*

3. Upon the evidence in this case it is *held,* that the services rendered and money paid by a son to his father constituted a valuable and adequate consideration for a conveyance of land to the son, and that he was a purchaser in good faith, without notice that a judgment against his father, which had ceased to be a lien upon the land, was unpaid.

APPEAL from the Circuit Court for *Manitowoc* County.
The plaintiff, being a creditor of the estate of Darby
Clark, deceased, brought this action in behalf of all the cred-
itors of such estate, pursuant to sec. 3825, R. S., to reach and
subject to sale, for the payment of debts against the estate,
eighty acres of land which Darby Clark in his life-time con-
veyed to the defendant. No question arises on the pleadings.
The undisputed facts seem to be correctly stated in the
printed case, as follows:

"Prior to 1857, both parents of the plaintiff died, and he
was left in charge of a step-mother, who, prior to that year,
married one Darby Clark, now deceased, who was the father
of the defendant. In 1857, the plaintiff being ten years of
age, said Darby Clark was, by the county court of Ozaukee
county, appointed his general guardian, and qualified as such
by giving the bond required by law. The plaintiff being at
that date the owner of forty acres of land in Ozaukee county,
the deceased, as his guardian, sold the same and appropriated
the money arising from such sale to his own use.

"On the 13th day of March, 1862, and while said Darby
Clark had said moneys in his hands, he, being the owner of
the premises described in the complaint, made a deed of said
premises, and other lands owned by him, to one Taugher,
the consideration expressed in the deed being $500, but
in fact no consideration was paid, and said Taugher never
entered into the possession of any of the premises described
in said deed, but said Clark remained in the possession
thereof, receiving all the benefits from the use of them, and
on the 28th of December, 1867, said Taugher conveyed said
premises, being 160 acres of land, back to said Darby Clark,
the deed expressing a consideration of $500, no consideration
in fact being paid.

"On September 2, 1863, one Thomas Byrnes was appointed
the general guardian of said plaintiff, said Darby Clark hav-
ing been removed by the county court of Ozaukee county.
An action was brought by said guardian against said Darby

Clark and his surety on his bond, and judgment obtained against them on October 27, 1863, for the sum of $1,293.21, which judgment was docketed in Manitowoc county on January 13, 1864.

"Said Darby Clark, on the 14th day of July, 1876, conveyed the forty acres of land, together with another forty acres adjoining it, to his son, the defendant in this action; the consideration expressed in said deed was the sum of $1,000, and said premises were worth at least the sum of $1,500. The defendant did not cause said deed to be recorded until May 30, 1878, five days after the death of said Darby Clark. This action was brought to set aside this deed as fraudulent. The defendant is the only child of said deceased, and always resided at home, except for about two years after he arrived at majority.

"Charles Mintzlaff and Christian Behrens, two of the sureties of said Darby Clark upon his bond as guardian of this plaintiff, recovered judgment against said Darby Clark for the moneys they were obliged to pay as sureties upon said bond, for the sum of $471, on the 23d of December, 1863. No portion of either of said judgments has ever been paid, and the last-named judgment was assigned to one Elijah Gove, who is now the owner thereof.

"The conveyance of said premises by deceased to the defendant rendered him unable to pay his debts, he retaining property not exempt of about the value of $850, being forty acres of land.

"The plaintiff attained his majority February 13, 1867, and the defendant attained his majority in 1869. In 1874 the defendant married, and his wife kept house for her husband and Darby Clark. The deceased died testate on the 25th of May, 1878, and letters of administration with the will annexed were issued to the defendant. Said administrator inventoried, as the estate of said deceased, personal property of the value of $285, the household forty of the

value of $2,000, and another forty acres of about the value of $850.

"The plaintiff's judgment was presented to the county court as a claim against the estate of the deceased, and allowed by it, and an appeal taken to the circuit court and the claim again allowed at $2,885.58, and the claim of said Gove was presented and allowed at $987.53. Before the trial of this action an order and determination of the county court of Manitowoc county was duly made by it, whereby it was determined that the estate of said deceased in the hands of said administrator was insufficient to pay the amount of the claims allowed by said county court against said deceased, and directing the payment of a *pro rata* amount on said claims, among them the claims of said plaintiff and said Gove."

The court found as facts (among other things not essential to be stated) the following:

"That said *John D. Clark* lived with his father, Darby Clark, until he arrived at his majority, and until that time the usual family relation was maintained between them; but when the defendant was twenty-one years of age he left home and went into the pinery and worked on his own account for about two years, when he returned to make his father a visit at the said premises, carrying with him $280, which he had saved during his two years' absence from home; that after the conclusion of such visit and as the defendant was about to again leave home with his money, his said father, Darby Clark, persuaded him to remain and work on the farm and to give him the said $280, promising the defendant, his son, that as compensation for such service, and as a consideration for said money, he, the said Darby, would upon his death give the said land or a part of it to his said son, *John D. Clark;* that said *John D. Clark* accepted said proposition, turned over said money to his father, and until the deeding of eighty acres of land hereinafter mentioned

by the said Darby to his said son, the latter continued to labor on the farm and help run a threshing-machine for his father.

"That on the 14th day of July, A. D. 1876, the said Darby Clark conveyed, by warranty deed, to his son, the defendant, the north eighty acres of the lands above mentioned for the expressed consideration of $1,000, but in fact said conveyance was made for the purpose of carrying, either wholly or partially, into effect the aforesaid promise, whereby the said *John D. Clark* was induced to stay with and work for his father after his two years' absence in the pinery, and in consideration of defendant's service rendered, and of said $280 paid to said Darby Clark in pursuance of said agreement; that said *John D. Clark* received said conveyance in good faith, and without any knowledge of any indebtedness owing by his said father except certain small bills which were afterward paid, he and his father each paying half.

"That in 1877, the next year after receiving said conveyance, the defendant worked the land so conveyed to him himself, without any or with very little aid from his father, Darby Clark, or his uncle Martin, and the grain raised on his land was stacked, threshed, and garnered separately from that raised on the other eighty acres; the said Darby Clark desiring that his son, after marriage, should become his own boss. In 1878 Darby Clark was too ill to have any care of the farm, and on that account the whole place was worked together, the defendant taking charge of the whole, assisted by his uncle Martin."

Martin Clark, above named, was a brother of Darby Clark, and a member of his family, and is one of the devisees named in the will of Darby. After the death of Darby Clark the defendant conveyed to Martin forty acres of the land so conveyed to him by his father in 1876.

The conclusions of law are as follows:

"*First*, that the said conveyance from Darby Clark to the

defendant was made in good faith, for a good consideration, and was valid and effectual to pass the title to the said north half of the northwest quarter of said section number thirty-four to said defendant.

"*Second,* that said conveyance from the defendant to the said Martin Clark was made in good faith for a good consideration, and was valid and effectual to pass the title in fee of the said northwest quarter of the northwest quarter of said section number thirty-four to the said Martin Clark.

"*Third,* that the plaintiff is guilty of laches, as stated in the seventeenth finding of fact, and on account thereof cannot claim the interposition of a court of equity to grant him the relief prayed for in his complaint and amended complaint.

"*Fourth,* that the defendant is entitled to the judgment of this court dismissing the plaintiff's complaint, and giving him the costs of maintaining his defense herein."

Judgment dismissing the complaint, with costs, was accordingly entered, and the plaintiff appealed therefrom.

For the appellant there was a brief by *H. G. & W. J. Turner,* and *E. S. Turner,* of counsel, and oral argument by *Mr. W. J. Turner.* They argued, *inter alia,* that Darby Clark having been so heavily indebted as to be insolvent at the time he made the conveyance in suit, and such conveyance having been made to his son as an advancement and without consideration, it followed as a conclusion of law that the conveyance was made in fraud of the rights of creditors. *Cole v. Tyler,* 65 N. Y., 77; *Young v. Heermans,* 66 id., 382; *Carpenter v. Roe,* 10 id., 227; *Fulton v. Fulton,* 48 Barb., 581; *Bennett v. McGuire,* 5 Lans., 183; *Smart v. Haring,* 14 Hun, 276; *Martin v. Vultee,* 12 Abb. Pr., 143; *Seymour v. Wilson,* 19 N. Y., 417; *Case v. Phelps,* 39 id., 164; *Bayard v. Hoffman,* 4 Johns. Ch., 450. Our statute as to fraudulent conveyances is taken from New York and the rule of the courts in that state is followed in this. *Sterling v. Ripley,*

3 Pin., 165; R. S. 1839, 161, 164, sec. 4; *Beck v. Cole,* 16 Wis., 102; *Howe v. Colby,* 19 id., 583; *Hamlin v. Jones,* 20 id., 537; *Kaye v. Crawford,* 22 id., 320; *Kaehler v. Dibblee,* 32 id., 31; *Butts v. Peacock,* 23 id., 361; *Steinart v. Deuster,* id., 136; *Place v. Langworthy,* 13 id., 629; *Blakeslee v. Rossman,* 43 id., 116; *Bank v. Bertschy,* 52 id., 454; *Manseau v. Mueller,* 45 id., 430. See, also, *Crawford v. Kirksey,* 28 Am. R., 704; *Whittlesey v. McMahon,* 10 Conn., 137; *Coleman v. Cocke,* 18 Am. Dec., 757; *Blake v. Jones,* 21 id., 530; *Emerson v. Bemis,* 69 Ill., 540; *Jenkins v. Clement,* 14 Am. Dec., 703; *Matson v. Melchoir,* 42 Mich., 477; *Star Wagon Co. v. Maurer,* 53 Iowa, 741; *Knowlton v. Hawes,* 10 Neb., 534; *Moore v. Orman,* 56 Iowa, 39; *Smith v. Conkwright,* 28 Minn., 23; *Savage v. Hazard,* 11 Neb., 323. The evidence in this case shows that the relation between the defendant and his father was not that of master and servant but that of parent and child. *Wells v. Perkins,* 43 Wis., 160; *Tyler v. Burrington,* 39 id., 376; *Pellage v. Pellage,* 32 id., 136; *Hall v. Finch,* 29 id., 278. See, also, *Haney v. Nugent,* 13 Wis., 283; *Potter v. Carpenter,* 76 N. Y., 157; *Robinson v. Stewart,* 10 id., 189; *Manseau v. Mueller,* 45 Wis., 430; *Godell v. Taylor,* Wright (O.), 82; *Brice v. Myers,* 5 Ohio, 121; *Cansler v. Cobb,* 77 N. C., 30; Bump on Fraud. Con., 197–266.

For the respondent there was a brief by *Nash & Schmitz,* and oral argument by *Mr. Nash.* To the point that if there is a bargain or understanding between an infant and one standing to him *in loco parentis* that compensation for the former's services should be made, the contract is valid and can be enforced; and this understanding may be express or implied, and in no case is it essential that the rate of wages should be agreed upon, they cited: *Fisher v. Fisher,* 5 Wis., 472; *Kaye v. Crawford,* 22 id., 320; *Hall v. Finch,* 29 id., 278; *Pellage v. Pellage,* 32 id., 136; *Tyler v. Burrington,* 39 id., 376; *Mountain v. Fisher,* 22 id., 93; *Jacobson v. La*

*Grange*, 3 Johns., 199; *Patterson v. Patterson*, 13 id., 379; *Fort v. Gooding*, 9 Barb., 371; *Dye v. Kerr*, 15 id., 444; *Guild v. Guild*, 15 Pick., 129; *Martin v. Wright*, 13 Wend., 460; 2 Parsons on Con., 47, note.

LYON, J.  The testimony of Kate Clark, the wife of the defendant, was read in evidence.  It is to the effect that on the day the deed from Darby Clark to the defendant was executed, the latter gave it to her to put away, and that she placed it in a trunk under her exclusive control, and kept it there until it was taken to be recorded.  The admission of this evidence is assigned as error.  This testimony was taken in another and similar action brought by the plaintiff against Martin Clark.  It was there objected to as incompetent and immaterial.  By a stipulation between the parties this case was determined on the proofs taken in the other case and no additional testimony was taken.  The above facts are agreed upon by the parties to save the necessity of an amendment to the bill of exceptions.  Neither in the action against Martin or in this action was any objection made to the competency of Mrs. Clark to testify as a witness for the defendant. In the absence of such objection the alleged error is not well assigned.  Moreover, the delivery of the deed by Darby Clark to the defendant, at the time of its execution, is sufficiently proved by other testimony.

The second error assigned is that the court erred in finding that the conveyance of July 14, 1876, by Darby Clark to the defendant was made upon a good consideration, and without the intent to cheat and defraud the creditors of Darby Clark.  Whether this assignment of error is well made or otherwise, is a vital question in the case.  The circuit judge found, and, we think, upon sufficient evidence, that the defendant left home in 1869, when he reached the age of twenty-one years, and worked for two years on his own account, during which time he saved from his earnings $280.

At the end of that time he returned home for a visit. After he had made his visit to his father, he was about leaving again, taking his money with him, when his father induced him to remain and work for him, and to let him have the $280, by promising the defendant that, as compensation for such service and as consideration for such money, he would, at his death, give his property, including the land in controversy, to the defendant. And further, that in consideration of such money and the defendant's services Darby Clark executed to him the conveyance of July 14, 1876, and that the defendant received the same in good faith and without knowledge that his father was in debt to any considerable amount. The claim of the learned counsel for the plaintiff is that there is no sufficient proof of an express agreement by Darby Clark to pay the defendant wages for his services, and he cites numerous cases in this court and elsewhere to support the proposition that in the absence of such express agreement the defendant cannot maintain a claim for services against his father, if living, or against his estate after his death.

The legal proposition contended for is well established. There is no implied contract on the part of a father to pay wages to his child who remains with him and renders him services after becoming of age. To recover, in such a case, the child must show an express contract by the father to pay such wages, either by direct and positive evidence of the fact, or by circumstantial evidence equivalent to direct and positive. *Tyler v. Burrington*, 39 Wis., 376, and cases cited; *Wells v. Perkins*, 43 Wis., 160. See, also, other cases in this court on the same subject, cited in the briefs of the respective counsel. But it is not essential that the rate of wages or the time of payment be agreed upon. If there is an express contract in such cases to pay for the services, the child thereby becomes the servant of his father in respect to such services, and may recover *quantum meruit*. This is the doctrine of *Wells v. Perkins, supra;* also of *Manseau v.*

*Mueller*, 45 Wis., 430. In the latter case the testimony to support the claim of a son was very similar to the testimony on the part of the defendant in this case. The difference between the two cases is that in *Manseau v. Mueller* the court did not credit the testimony tending to show the alleged agreement by the father to pay wages to his son, and the latter was defeated in the action, while in this case the court believed the testimony which tended to show such an agreement, and the son prevailed in the action.

Hence, we find in this case not merely a *good* consideration but a *valuable* consideration paid for the land by the defendant. We also think the testimony shows an adequate consideration paid therefor. The land is valued at $1,500 at the time it was conveyed. The defendant paid therefor $280 in 1871, and rendered five years' services on account thereof before the conveyance. The value of his services was not proved, but it appears that he was able to save $140 per year, over and above his expenses, during the two years he was away from home. It is fair, we think, to estimate his services at the same rate during the five years he worked for his father. At this rate the defendant paid nearly $1,000 for the land, exclusive of any allowance of interest. During the last two years of the five the defendant had a wife, who kept the house for the defendant and his father. It is fair to presume that she earned her own living. It should be observed that the defendant continued to render some services to his father after the conveyance, until the death of the latter nearly two years later. The above facts are mainly proved by the testimony of the defendant. The circuit judge evidently believed his testimony, and we must, therefore, take it as true. Our conclusion is that the facts found show there was not only a valuable but an adequate consideration paid by the defendant for the land; and this is probably what is intended in the conclusion of law on that subject.

Did the defendant take his conveyance "in good faith, and without knowledge of any indebtedness owing by his father," except certain small bills mentioned in the findings? The circuit judge so found, and we think the finding is sustained by the evidence. Certainly there is no evidence that he had actual knowledge of the plaintiff's judgment. That judgment was recovered in 1863, and it ceased to be a lien upon the land of Darby Clark in 1873. R. S. 1858, ch. 132, sec. 36. The plaintiff slept upon his rights for nine years after he became of age, before the land was conveyed to the defendant, and made no effort to enforce collection of it. During nearly all of that time the title was in Darby Clark, and it was only necessary for the plaintiff to apply to the court for execution before the lien of his judgment expired, and advertise and sell the land in controversy by virtue thereof. R. S. 1858, ch. 134, sec. 2. If he did not know that Taugher, the fraudulent grantee of the land in the conveyance of 1862, reconveyed the land to Darby Clark in 1867, a very moderate degree of diligence would have informed him of that fact. Under these circumstances, chiefly because the plaintiff's judgment was not a lien upon the land in 1876 and did not affect the chain of title thereto, we do not think the defendant chargeable with constructive notice that the plaintiff had an unpaid judgment against Darby Clark.

The third and only remaining assignment of error is predicated upon the conclusion of law that the plaintiff had been guilty of such laches that a court of equity should not grant him relief. Having reached the conclusion that the defendant is a *bona fide* purchaser of the land for a valuable and adequate consideration, this alleged error is immaterial, and hence will not be considered.

Upon the whole case we think the judgment should be affirmed.

*By the Court.*— Judgment affirmed.