62  343|
e70  805|

# JANUARY TERM, 1901.

### PRESENT:

HON. FRANK DOSTER, CHIEF JUSTICE.
HON. WILLIAM A. JOHNSTON, } ASSOCIATE JUSTICES.
HON. WILLIAM R. SMITH,

C. W. MITCHELL *et al.* v. F. J. SIMPSON.

No. 11,548.  (63 Pac. 440.)

1. PRACTICE, DISTRICT COURT—*Juries in Equity Case.* In an equity case the court may take the advice of different juries at different times as to the issues of fact involved, by submitting to them questions for their consideration and answer.

2. CONVEYANCE—*Parent to Child for Services— Sufficient Consideration.* A daughter remained for several years after attaining her majority in the family of her parents and performed services therein without an agreement for compensation, but finally the father agreed with her that if she would continue to remain and take charge of the household he would pay her not only for what services she might thereafter perform, but for what she had already performed, to which proposition she assented and with which she complied. Several years thereafter the father conveyed land to the daughter in fulfilment of the agreement. *Held,* that the conveyance was upon sufficient legal consideration and will be upheld, though prejudicial to the father's other creditors.

Error from Bourbon district court; W. L. SIMONS, judge.  Opinion filed January 5, 1901.  Affirmed.

*John C. Crain,* for plaintiffs in error.

*J. I. Sheppard,* and *W. R. Biddle,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action brought by the defendant in error against the plaintiffs in error to enjoin the sale under execution of a tract of land. Judgment was rendered perpetually enjoining the sale and the defendants have prosecuted error to this court.

Summarized, the facts were that the plaintiff below, F. J. Simpson, or Miss Jessie Simpson, as she is sometimes designated in the record, became of age in 1883. After attaining her majority she continued to live with her father and mother as a member of the family, performing in it the ordinary household duties, but receiving no compensation therefor other than her maintenance. In 1891 her mother became ill, and died in about a year thereafter. During the mother's illness the daughter, at the solicitation of her parents, agreed to remain at home and take care of the household, the father promising, if she would do so, to pay her for her future labors and also for what she had already done. To this she assented, and thereafter remained at home in charge of the household until her mother's death, and thereafter until the events subsequently narrated. The mother at the time of her death owned 600 acres of land, but made no devise of it. At her death one-half of this land went to the husband and father, under the statute of descents and distributions; the other half to the children, of whom there were several, Miss Jessie being the oldest.

In 1894 the father, William Simpson, became indebted as surety for another to the State Bank of Fort Scott. The indebtedness was not paid, and in 1896 judgment for the amount of it was recovered. A few months preceding the recovery of the judgment Simp-

son conveyed his half interest in the land which had belonged to his wife to the daughter, Miss Jessie, in fulfilment of the promise he had made to pay her for remaining at home, and for the household services rendered by her. In the meantime the State Bank had gone into the hands of a receiver, who, conceiving the conveyance from the father to the daughter to be without consideration and fraudulent, caused execution to be issued on the judgment and levied on the land. To enjoin the sale of the land upon the execution and levy, the action in the court below was brought. A jury was called to consider certain matters of fact in issue and to advise the court thereon, but not to render a general verdict. It was asked the following questions, and made the following answers:

"1. Ques. Were the deeds in question or either of them made by William Simpson to F. J. Simpson for the purpose of hindering, delaying or defrauding the receiver of the State Bank of Fort Scott? Ans. No.

"2. Q. Did F. J. Simpson receive said deeds or either of them with the purpose of aiding or assisting her father in hindering, delaying or defrauding said receiver? A. No.

"3. Q. Did F. J. Simpson, at or before the date of said deeds, have knowlege of the purpose of her father by making said deeds to hinder, delay or defraud his creditors? A. No.

"4. Q. Did F. J. Simpson, at or before the date of said deeds, have the means or opportunity of ascertaining that it was the purpose of her father in making said deeds to hinder, delay or defraud his creditors? A. No.

"5. Q. What consideration, if any, did F. J. Simpson pay her father for the deeds in question? A. By her labor."

Upon the return of the above interrogatories and answers, the court, desiring to be further advised upon

other matters in issue, of its own motion ordered a continuance of the case, and at the succeeding term submitted other questions to another jury, which, with the answers thereto, were as follows :

"1. Ques. What was the real estate conveyed to plaintiff worth? Ans. $3450.

"2. Q. What was the amount or value of the consideration which said plaintiff paid for the land so conveyed. A. $1500."

The court thereupon rendered judgment for the plaintiff "upon the pleadings, evidence, and answers of the jury to the special questions propounded to them." From this judgment, as before stated, error has been prosecuted.

The first error assigned is the submission of issuable facts to two different juries. This method of practice has not been heretofore called to our attention

1. Two juries in equity case.

nor have any cases in other states approving or disapproving it been cited to us. We are unable to perceive in it, alone, any prejudicial error. The case was one in equity. Neither of the parties was entitled to a jury. The court might have heard it without a jury. It was the common practice of the equity courts before the adoption of the code to take the advice of a jury as to difficult questions of fact, especially in cases involving charges of fraud, and the practice of doing so still prevails under the reformed procedure. However, in such cases the courts are not bound to rest their conclusions upon the findings of fact made by the jury but may disregard them wholly, if not consistent with their view of the evidence. It would seem to follow, therefore, that until the court feels sufficiently enlightened upon the meritorious issues of the case it may continue to ask the advice of jurors concerning them, and,

unless it be shown that prejudice to a suitor has resulted from so doing, the bare fact that the court submitted some of the issuable facts to one jury and others to another one will not constitute reversible error. It may be remarked in this connection that the fact that the case was partially tried at one term of court and concluded at another one, while mentioned by plaintiffs in error as an incident of the proceedings, is not asserted to be in itself a ground of error. It is the fact that it was tried at different times—not that those times were different terms—of which complaint is made.

The plaintiffs in error objected in the court below to the sufficiency of the consideration for the deed to the land from the father to the daughter. This they did **2. Conveyance by parent to child.** by objections to evidence, by requests for instructions to the jury which were not given, and objections to instructions which were given. In support of this claim of error they urge the familiar doctrine that a child, who after attaining majority continues to reside with the parents and to perform for them household or other labors, is presumed to do so as a member of the family, and is not entitled to payment therefor, to the prejudice of the parents' creditors, unless it be shown that the services were performed in pursuance of a contract for compensation. That such is the rule will not be questioned, but under the facts of the case as specially found by the jury and approved by the court, and likewise as generally found by the court itself as to matters not specially submitted to the jury, the case of the young woman falls within the exception to the rule which allows compensation, and not within the general rule which disallows it; that is to say, there was an agreement by the father to pay the daughter for the services. As

previously stated, before the recovery of the judgment upon which the execution in question was issued, and to induce the daughter to remain in the household and continue her services, the father promised to pay her not only for what labor she might thereafter perform but for what she had already performed since attaining her majority.

That a parent may compensate an adult child for remaining in the family and performing labor therein cannot be questioned. We think it never has been questioned. That after an adult child has performed services without an agreement for compensation, the parent, as an inducement to remain in the service of the family, may lawfully promise to pay for what before that time had been performed without an agreement cannot, as we think, be questioned. Of course in such last-mentioned case the agreement to pay for past services must not be a device to defraud creditors. It must be *bona fide*. If *bona fide*, the transaction is unassailable. In the case under consideration the court below found it to be *bona fide*, and it is therefore unassailable, because the consideration to pay for the past services was not the performance of those services, but it was the agreement to remain in further service. The facts in the case of *Graves v. Davenport*, 50 Fed. 881, were quite similar to the facts in this case, and in that the agreement between the parent and child was upheld. Other cases not entirely similar but sufficiently so to indicate the just rule are *Howard v. Rynearson*, 50 Mich. 307, 15 N. W. 486; *Citizens' State Bank v. Weston*, 103 Iowa, 736, 72 N. W. 542.

Another assignment of error is that the judgment of the court below was contrary to the evidence. The argument under this assignment specialized some claimed contradictory evidence of the defendant and

her witnesses, and some facts and circumstances supposed to be indicative of fraud, one of which was a disproportion between the value of plaintiff's services and the value of the land deeded to her. As to all of these matters the plaintiffs in error are concluded by the findings of the jury and the court.

The judgment of the court below is affirmed.