OFFICER, RESPONDENT, *v.* SWINDLÉHURST ET AL., APPEL-
LANTS.

(No. 2,804.)

(Submitted April 4, 1910.   Decided April 18, 1910.)

[108 Pac. 583.]

*Parent and Child—Services of Latter—Compensation—Implied
Contract—Validity.*

Parent and Child—Services—Compensation.
  1.   Where an agreement has been made by a parent to pay for the
  services of his child, it can be enforced, and a conveyance of property
  in payment for services rendered will be upheld in the absence of
  actual fraudulent intent.
Same—Services—Compensation—Implied Contract.
  2.   A contract to pay for services rendered by a child to its parent
  may be inferred from circumstances, or may arise from operation of
  law.
Same—Services—Compensation—Implied Contract—Consideration.
  3.   After a daughter became of age she left home and was earning
  her own as well as a younger brother's living.   Three years later her
  father received an injury which permanently incapacitated him from
  further physical exertions, and the daughter was called home and from
  that time furnished practically all the maintenance of the family.
  About a year thereafter the father, in consideration of past and
  future services, conveyed to her a piece of property upon which she
  placed valuable improvements.   *Held*, that under these circumstances
  there was an implied promise on the part of the father, upon the
  return of the daughter, to pay for the services to be rendered by her,
  and that the amount due on the date of the conveyance for past
  services was a valuable consideration for the same.

*Appeal from District Court, Park County; Frank Henry,
Judge.*

SUIT by Kate M. Officer against J. E. Swindlehurst and an-
other.   From a decree for plaintiff and from an order denying
a new trial, defendants appeal.   Affirmed.

Cause submitted on briefs of counsel.

*Mr. A. P. Stark* submitted a brief in behalf of Appellants.

Services of a son or daughter, rendered while remaining in the father's family after becoming of age without a contract for payment, are deemed gratuitous. They will not even form a consideration which will protect a transfer of securities afterward made by the father to the child against claims of creditors. (*Guffin* v. *First Nat. Bank,* 74 Ill. 259.) Evidence that a daughter rendered services to her father while living as a member of his family, without any express contract for hire, does not show a valuable consideration for the transfer to her of property while he is insolvent. (*Ionia Co. Sav. Bank* v. *McLean,* 84 Mich. 625, 48 N. W. 159.) Services rendered by children to their father, while residing with him, without any agreement for compensation, do not constitute a valuable consideration of a deed of land from him to them, as against his creditors. (*Sanders* v. *Wagonseller,* 19 Pa. 248; *Lord* v. *Locke,* 62 N. H. 566; *Haney* v. *Nugent,* 13 Wis. 283; *Snyder* v. *Free,* 114 Mo. 360, 21 S. W. 847.)

If by a secret understanding the consideration of the transfer in whole or in part is an obligation for the future support of the grantor or his family, the transfer is either *prima facie* or conclusively fraudulent and void as to existing creditors. (20 Cyc. 533, 570.) A conveyance by an insolvent, in consideration of his future support, is void so far as it puts the property of the grantor out of the reach of his creditors. (*Mallow* v. *Walker,* 115 Iowa, 238, 91 Am. St. Rep. 158, 88 N. W. 452; *Coleman* v. *Gammon* (Iowa), 83 N. W. 898; *Spiers* v. *Whitesell,* 27 Ind. App. 204, 61 N. E. 28; *Tenbrook* v. *Jessup,* 60 N. J. Eq. 234, 46 Atl. 516; *Hanna* v. *Charleston Nat. Bank,* 55 W. Va. 185, 46 S. E. 920; *Walker* v. *Cady,* 106 Mich. 21, 63 N. W. 1005; *Kelsey* v. *Kelley,* 63 Vt. 41, 22 Atl. 597, 13 L. R. A. 640.) In the case of *Seekel* v. *Winch,* 108 Iowa, 102, 78 N. W. 821, the court holds that a conveyance for future support of the grantor is voluntary, and the grantee has the burden of showing that the grantor had other property sufficient to pay his debts.

*Messrs. John T. Smith & Son,* for Respondent, submitted a brief.

A conveyance by a parent to his children in consideration of services rendered under an agreement previously made for compensation therefor is valid as against creditors of the parent. (*Mitchell et al.* v. *Simpson,* 62 Kan. 343, 63 Pac. 440; *Citizens' State Bank* v. *Weston,* 103 Iowa, 736, 72 N. W. 542; *Leqve* v. *Stoppel,* 64 Minn. 152, 66 N. W. 124; *Byrnes* v. *Clark,* 57 Wis. 13, 14 N. W. 815.) Nor does this compensation have to be an agreed amount. (*Low* v. *Wortman,* 44 N. J. Eq. 193, 7 Atl. 654, 14 Atl. 586; *Stewart* v. *Small,* 11 Ind. App. 100, 38 N. E. 826.) This court has laid down the following rules in this respect: "The fact that a conveyance of the land is from daughter, or *vice versa,* is not sufficient to stamp it with fraud," and "Mere inadequacy of consideration is not in itself sufficient cause to invalidate a conveyance, except in extreme cases." (*Mueller* v. *Renkes,* 31 Mont. 100, 77 Pac. 512.)

MR. JUSTICE SMITH delivered the opinion of the court.

The plaintiff in her complaint alleges: That she is the owner in fee and in possession of a certain lot, 50 feet wide and 150 feet deep, situated at Hunter's Hot Springs, in Park county; that one W. C. Officer, formerly the owner of the lot, conveyed the same to her, for a valuable consideration, on the twenty-seventh day of June, 1902; that on December 1, 1904, a judgment for $2,913.58 was recovered in the district court of Park county, by the defendant Swindlehurst against said W. C. Officer, and thereafter, on June 26, 1905, an execution issued upon said judgment, and the defendant Robertson, as sheriff, sold all of the right, title and interest of W. C. Officer in and to the premises to the defendant Swindlehurst for $1,500, and issued to the latter a certificate of sale for the same. She prays that she be decreed to be the owner of the lot; that her title be quieted; that the claim of Swindlehurst be adjudged to have no validity; that the sale by the sheriff be declared null and

void; and that the latter be restrained from issuing a deed to his codefendant.

The amended answer sets forth affirmatively that in 1894 three certain judgments were entered in the district court of Park county against W. C. Officer and one Fargo; that certain property was sold and the proceeds applied toward the satisfaction of said judgments, leaving a balance due on each judgment; that afterward, and during the year 1898, the deficiency judgments were all assigned to James A. Murray; that on October 26, 1904, the defendant herein, Swindlehurst, who was then the owner of the same, began an action on the several judgments against W. C. Officer, which action resulted in another judgment against Officer for the sum of $2,913.58; that on May 19, 1905, execution was issued upon the last judgment, levied upon the land mentioned in the complaint herein, the same was sold to Swindlehurst for the sum of $1,500, and a certificate of sale therefor issued to him. It is also alleged that the sale of June 27, 1902, from Officer to the plaintiff, who is his daughter, was made for the purpose of concealing his property from the holders of the aforesaid judgments, and to hinder, delay and defraud the owners thereof; that the same was without consideration, was wholly voluntary, sham, fictitious and void. Defendants also aver that W. C. Officer has owned no other property since February 4, 1895, and it was and is impossible to collect the amount of said judgment from him without resorting to the land in controversy.

For replication the plaintiff sets forth that she became eighteen years of age in 1898, at which time she was residing with her father and mother at Hunter's Hot Springs; that her mother was an invalid and unable to work; that plaintiff had three brothers, minors of tender age, who were unable to be of any considerable assistance to her parents in gaining a livelihood for the family; that she remained at home, assisting in the household duties, except during a portion of the time when she was at school in Bozeman, during which time she worked for her board and that of a younger brother; that on April 23, 1901,

41 Mont.—9

her father was injured and became paralyzed, and has since been an invalid, unable to work or support his family; that on account of the injury to her father she was called home to support the family; that she henceforth remained at home, "took in sewing and washing and such other work as she could procure from the hired men and guests at the Hunter's Hot Springs Hotel, and also took boarders, and thereafter, on the twenty-seventh day of June, 1902, she not hitherto having received any compensation for her services, her father, for and in consideration of her services so rendered and of an agreement on her part that she would continue to care for, support, and maintain her father, he and her mother made and executed the deed to the property mentioned in the complaint"; that she has fully carried out the agreement on her part; "that in the year 1903 she cleared the sum of $1,400 by boarding men, and with that money and other money which she has earned since, she has constructed a frame building on the premises, in which she resides with her father and mother and in which they keep a small notion store; that at the time she received the deed to the property none of the judgments mentioned was a lien upon the same; that she purchased in good faith and has since improved the same to the extent of about $4,000, all of which money she has invested in good faith, relying upon the title conveyed to her by her father, and all of which improvements were placed thereon by her while the defendant Swindlehurst and his assignor, Murray, well know that she was so investing her money and improving the property, and that Swindlehurst and Murray are both estopped from disputing her title."

The cause was tried to the district court of Park county, sitting with a jury. The following special verdict was returned:

"Interrogatory No. 1. Was there any consideration passed from the plaintiff to W. C. Officer for the transfer to her of the property described in the pleadings; and, if there was, what was such consideration? Answer: Yes. Labor and services.

"Interrogatory No. 2. Was W. C. Officer, at the time he executed the deed to Kate M. Officer, on the twenty-seventh

day of June, 1902, indebted to the said Kate M. Officer for labor and services rendered by her to him after she became eighteen years of age? Answer: Yes.

"Interrogatory No. 3. Did the plaintiff at the time she purchased the land from W. C. Officer take the deed in good faith, and without any design on her part to hinder, delay, or defraud the creditors of the said W. C. Officer in the collection of their debt? Answer: Yes.

"Interrogatory No. 4. Did the plaintiff at the time she received the deed from W. C. Officer and wife agree, as a part of the consideration for said conveyance, with the said W. C. Officer that she would improve the said premises, and allow the said W. C. Officer and wife, her parents, to remain with her, and that she would help support and maintain them; and, if your answer to this interrogatory thus far is in the affirmative, has the plaintiff since hitherto carried out her contract with the said W. C. Officer and wife, and fully performed the conditions of the same, as to improving the said premises and caring for and maintaining the said W. C. Officer and wife? Answer: Yes; she has."

The jury also returned the following general verdict: "We, the jury impaneled and sworn in the above-entitled action, find for the plaintiff." The court adopted the findings of the jury, and entered a decree thereon in favor of the plaintiff for the relief demanded in her complaint. From the judgment and an order denying a new trial, the defendants have appealed.

The testimony of the plaintiff tended to substantiate the allegations of her replication, so far as the same relate to the services performed by her and the improvements she has caused to be placed upon the property. She also testified: "The consideration that passed from me to my father for these premises was my agreement to look after it to the best of my ability and improve it and make a home for father and mother and my small brother. * * * A part of the consideration for the deed was my promise to improve the premises and make a home for my parents and smaller children. * * *

Father and mother went to Livingston to have the deed made. * * * There was nothing unusual about their leaving home at that time which particularly impressed it upon my mind, except the fact that I was to receive this piece of property for my services. * * * From 1898 until the execution of this deed, all my time and everything I earned was turned in to support the family, except my own board and clothes. About 1901 I was in Bozeman going to school, and was called home on account of an injury to my father, and he has never recovered from it. * * * In May, 1904, the improvements on the place were commenced. The money to build the house was earned cooking for a crew of men that put in the water-works at the springs, and doing anything else that I could get to do from that. Mr. Murray was about the springs the summer of 1904, and lived right next door to us. I had conversation with him about these improvements in the summer of 1904. He made no claim whatever to the property. * * * I became of age in 1898. * * * I supposed that all of these old judgments had been satisfied when everything father owned had been taken for his debts, with the exception of this one lot, and I didn't know there was anything against this place until after it was in my possession." When the plaintiff was asked by her counsel to tell what services she performed for the family prior to the date of the conveyance, the defendants' counsel objected to the question on the ground that no claim is made in the complaint "that the consideration for the conveyance was for past services rendered." The objection was overruled and an exception noted, but no error is now predicated upon the ruling; so that we may assume that the case is presented to us solely upon the questions hereafter considered, regardless of any question of pleading. We are, then, to determine what the relative rights of the parties are as disclosed by the evidence.

Two contentions are advanced by the appellants, *viz:* (1) That, in the absence of an agreement between plaintiff and her father that she was to receive compensation for her services

after she became of age, any services which she did render are presumed to have been gratuitous on account of the relationship of the parties, and do not constitute a valid consideration for the conveyance of property as against the father's creditors; and (2) that an agreement on her part to support her father and mother in the future is either *prima facie* or conclusively fraudulent, and void as to existing creditors of her father.

It may first be noted that no question of inadequacy of consideration is involved. In fact, there is no testimony as to the value of the lot at the time of the conveyance from Officer to his daughter. The contention of the appellants is that the conveyance was in the light of the testimony fraudulent as a matter of law. One of the cases confidently relied upon by the appellants is *Guffin* v. *First Nat. Bank of Morrison*, 74 Ill. 259. In that case the court said: "No principle is better settled than where a son or daughter remains in the father's family after becoming of age, in the absence of a contract, such person can recover nothing for services rendered, and whatever the father may choose to give in after years is nothing more than a mere gift. He is under no legal obligation to make any recompense. The son or daughter is presumed to have rendered such services gratuitously." In the case of the *Ionia County Sav. Bank* v. *McLean*, 84 Mich. 625, 48 N. W. 159, it appeared that a daughter lived with her father as a member of his family for some eleven years after attaining her majority, and performed services during that time, but without any contract for hire. It was held that she had no valid claim which could be enforced either against him or his estate. See, also, to the same effect, *Sanders* v. *Wagonseller*, 19 Pa. 248; *Snyder* v. *Free*, 114 Mo. 360, 21 S. W. 847. The supreme court of Iowa in *Harris* v. *Brink*, 100 Iowa, 366, 62 Am. St. Rep. 578, 69 N. W. 684, stated the second rule relied upon by the appellants thus: "The authorities proceed upon the theory that it is the legal duty of a debtor to pay his debt rather than to provide for his future support." (See, also, 20 Cyc. 533-570.)

On the other hand, it is almost uniformly held that, where
an agreement to pay for services has been made, it can be en-
forced, and a conveyance of property in payment for services
rendered will be upheld, in the absence of actual fraudulent
intent. (See *Mitchell* v. *Simpson,* 62 Kan. 343, 63 Pac. 440;
*Byrnes* v. *Clark,* 57 Wis. 13, 14 N. W. 815; *Leqve* v. *Stoppel,*
64 Minn. 152, 66 N. W. 124; *Citizens' State Bank* v. *Weston,*
103 Iowa, 736, 72 N. W. 542.) And the contract may be in-
ferred from circumstances or may arise by operation of law.
The supreme court of Wisconsin, in *Byrnes* v. *Clark, supra,*
said: "If there is an express contract to pay for the services,
the child thereby becomes the servant of the father in respect
to such services, and may recover *quantum meruit.*" (See,
also, Schouler's Domestic Relations, 5th ed., sec. 269.) In
*Snyder* v. *Free, supra,* the supreme court of Missouri said:
"The ordinary presumption as to such services [that they were
gratuitous] may be overcome by proof of an express or implied
contract which looks to compensation as a reward for services
rendered." A contract to pay may be inferred from circum-
stances. (*House* v. *House,* 6 Ind. 60.) We must not forget
that the rule of law which denies a right of recovery to the
child, in the absence of a contract for compensation, is at best
founded only in presumption. In the absence of proof to the
contrary, such services are presumed to have been gratuitously
rendered. The great majority of the decided cases dealing with
the subject relate either to causes like the one at bar, or to those
involving claims against the estate of a deceased parent; and the
presumption appears to have arisen from the necessity of af-
fording protection to creditors and others in the circumstances.
But we are inclined to the opinion that, where the circumstances
of the particular case tend to rebut the presumption, those cir-
cumstances may well be taken into consideration, especially by
a court of equity, in determining whether the claimant to com-
pensation may rely upon an implied promise to pay for the
services rendered.

Assuming, then, that the agreement to look after and improve
the property and make a home for the father and mother was

not a sufficient consideration for the transfer in this case as against existing creditors, it still remains to be determined whether the father was not bound as upon implied contract to pay what the daughter's services were reasonably worth.

In the case of *Reando* v. *Misplay*, 90 Mo. 251, 59 Am. Rep. 13, 2 S. W. 405, it was held that where a daughter rendered services to her insane mother, in taking care of her, and intended, while so doing, to charge for the same, and such services were necessary for the comfort and well-being of the mother, the daughter might recover for the services. It was there said, however, that, if the services were rendered as acts of gratuitous kindness, and as a member of the family, with no intention of charging for the same, the daughter could not recover, and that in such latter case it would make no difference how meritorious and valuable they may have been. In the case of *Fisher* v. *Fisher*, 5 Wis. 472, it was held that where a son continued to reside with, and labor for, his father after arriving at the age of majority, there might be circumstances, short of an express promise to pay on the part of the father, entitling the son to recover for his services. The court said: "But it would manifestly have been incumbent upon the son to show that the ordinary relation of child and parent did not subsist between him and his father, and that it was the understanding of the parties that he should have compensation for his services." The supreme court of Indiana has said: "It is a general rule that where a child continues with the parent after becoming of age, no express contract for wages being shown, the presumption is no wages are to be paid. But a contract to pay a reasonable compensation may be inferred from circumstances tending to rebut the presumption that there was to be no compensation." (*Adams* v. *Adams*, 23 Ind. 50.) And the supreme court of North Carolina in *Young* v. *Herman*, 97 N. C. 280, 1 S. E. 792, recognized the same rule. (See, also, *Hilbish* v. *Hilbish*, 71 Ind. 27; *Hart* v. *Hess*, 41 Mo. 441; *Fitch* v. *Peckham*, 16 Vt. 150; *Miller* v. *Miller*, 16 Ill. 296.) In the case of *Mitchell* v. *Simpson, supra,* the supreme court of Kansas said:

"That after an adult child has performed services without an agreement for compensation the parent, as an inducement to remain in the service of the family, may lawfully promise to pay for what before that time had been performed without an agreement, cannot, as we think, be questioned. If *bona fide,* the transaction is unassailable." The case of *Freeman* v. *Freeman,* 65 Ill. 106, very well illustrates the situation of the plaintiff in this case. It there appears that a son, some time after his majority, left his parents, commenced business on his own account, and was afterward induced by his father to return, all his other sons having left him, and he continued to labor for his father for many years, managing his affairs and supporting his parents, for which he received nothing but his board, scanty clothing, and a little spending money. The proof also showed that the father intended to compensate him by devising his farm to him, but was killed before he had made his will. It was held that it was but reasonable to presume that the father intended to pay and the son to receive pay for his labor, either in money or by devise in the father's will, and that a verdict in favor of the son for services against the father's estate would not be disturbed.

The transcript before us has not been prepared in accordance with paragraph 3 of Rule VII of this court (37 Mont. xxviii, 57 Pac. vi), in that, this being an equity case wherein questions of fact arising upon the evidence are submitted for review, the testimony should have been presented by question and answer. Mention is made of this simply to emphasize the idea that the judge and jury below were in a much better situation to draw proper conclusions than are the members of this court. We are obliged, therefore, to place a greater reliance upon the findings than would otherwise be necessary.

It appears that the first judgment against Officer was recovered more than ten years before the commencement of this action, and that after everything which he owned, with the exception of the lot in controversy, had been taken for his debts, the balance was allowed to remain wholly unsatisfied

until it was no longer a lien upon the lot. In the meantime the plaintiff became of age and left home, going to Bozeman to school, during which time she worked for her board and that of a younger brother. On April 23, 1901, her father received an injury which seems to have incapacitated him for further physical exertions in behalf of himself or family, and requested her to return home. She was then twenty-one years of age, and, according to the undisputed testimony, was depending upon her own labor, not only for her own education and support, but for the support of her younger brother as well. She may well be considered as having severed her relations with her father's family when she went to Bozeman, and as having returned at his request, not merely as a daughter, but as one who was to furnish practically all of the maintenance for her family from that time on. Indeed, we think, under the circumstances, the jury would have been justified in finding an implied promise to pay for the services without any further testimony. But there is more. The father himself, evidently realizing the injustice and inhumanity of allowing her to expend the best years of her life in hard labor without compensation, finally agreed to recompense her for what she had done and for her future services. It is true that in one aspect this agreement was illegal as to existing creditors, but the fact that it was made demonstrates beyond a doubt that neither Officer nor his daughter regarded the services as gratuitous. This being so, an implied promise to pay *quantum meruit* immediately arose, and, if anything was due her on June 27, 1902, the amount then due was a valuable consideration for the conveyance which she received on that date, provided the transaction was had in good faith, and as to that there can be no doubt under the testimony. It appears that she had worked for, nursed and supported the family for about fourteen months prior to the time when she received the deed, and she herself says: "I was to receive this piece of property for my services." There is no testimony as to what her services were worth, but neither is there any as to the value of the lot; and, as defendant Swindlehurst's prede-

·cessor in interest made no effort to subject it to the satisfaction of his judgment, although he lived in the vicinity, it may fairly be presumed that its value was small prior to the time when plaintiff improved the same.

We think the right party had judgment in the district court, and that the order denying a new trial should be affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY ·concur.

