No. 21,535.

GEORGE BRECHEISEN, Jr., *Appellant*, v. G. W. CLARK et al.
(MARY L. CLARK, *Appellee*).

SYLLABUS BY THE COURT.

1. FINDINGS OF FACT—*Conclusive on Appeal.* Rule followed that a verdict and judgment supported by sufficient and competent testimony will not be disturbed on appeal merely because that testimony may have been somewhat shaken and discredited through the cross-examination of witnesses for the prevailing party.

2. SAME—*Reward of Diligent Creditor.* Rule followed that the law favors the diligent creditor.

3. FRAUDULENT CONVEYANCES—*Debtor May Prefer Creditors.* A debtor in failing circumstances may prefer one creditor to others, and so long as that creditor receives such preferment in payment for a *bona fide* preëxisting indebtedness, having given adequate consideration therefor, such creditor commits no fraud on other creditors; and it is immaterial that the satisfaction of her due may result in exhausting the debtor's assets to the prejudice of other creditors; and the motives of the debtor in preferring her to other creditors, although she may be aware of them, are immaterial so long as the creditor does nothing to create those motives and acts solely to obtain fair satisfaction of what is justly due her, following *McDonald v. Gaunt,* 30 Kan. 693, 2 Pac. 871; *Kennedy v. Powell,* 34 Kan. 22, 7 Pac. 606; *Hasie v. Connor,* 53 Kan. 713, 37 Pac. 128; *Gilmore v. Swisher,* 59 Kan. 172, 52 Pac. 426; *Bank v. Schuette,* 100 Kan. 45, 163 Pac. 1073.

4. SAME—*Conveyance Through Third Party.* A transfer of realty in this state may be made directly from spouse to spouse, but no peculiar significance attaches to an intermediate transfer of the property to a third party when the true purpose of the latter is sufficiently established.

5. TRIAL—*Long Deliberation by Jury—No Error Shown.* In the absence of unusual circumstances, no error arises from the fact that the jury were held to their task for forty hours before they reached a verdict.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed November 9, 1918. Affirmed.

*Archie D. Neale,* of Chetopa, and *William P. Dillard,* of Fort Scott, for the appellant.

*Al. F. Williams,* and *F. W. Boss,* both of Columbus, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff brought this action to recover possession of one hundred and twenty acres of land and to quiet his title thereto.

Sometime prior to this proceeding the plaintiff had commenced an action against the defendant, G. W. Clark, for a sum of money. At that time Clark owned the land in controversy. While that action was pending, Clark conveyed the land to his daughter for the nominal sum of $10, and she in turn conveyed it to her mother, Mary L. Clark, for $25. Plaintiff recovered judgment in his action for money against Clark, and caused an execution to be issued and levied against this land as the property of the defendant, and it was sold by the sheriff to plaintiff, and in due time the sheriff executed a deed conveying the property to plaintiff. Plaintiff then brought this action against Clark and his wife and other members of the Clark family alleging his ownership, and alleging that the conveyances from Clark to his daughter and from the daughter to Clark's wife, Mary L. Clark, were made for the purpose of hindering, delaying and defrauding the plaintiff as a creditor of Clark.

Mary L. Clark's answer, among other matters, alleged that she and her husband were married in 1884; that she had received certain moneys and property from her parents, and that such property had been sold and the proceeds and other moneys of hers had been invested and reinvested in lands in Iowa, which were eventually sold in 1902 for $7,650; that she had advanced to her husband $700 at one time and $3,000 at another time; that when her husband became involved in litigation with plaintiff she feared that the moneys she had given her husband might be lost, and had required her husband, for the purpose of protecting her, to convey the land to her; and that the transfers of the land to her daughter and from the daughter to her has been made in good faith and for her protection.

The defendant, Mary L. Clark, prevailed, and the plaintiff appeals, and in his brief he argues strongly against the credibility of the evidence adduced by defendant, and he points out the seeming weakness and inconsistencies in defendant's evidence and in that of her husband.

Turning, as this lawsuit did in the trial court, almost wholly on the determination of the facts in issue, it naturally pro-

voked a spirited contest and furnished an unusual opportunity for counsel skilled in the art of cross-examination. And this opportunity was used with such cleverness and penetration that a reviewing court with nothing but the printed record before it might well doubt the correctness of the jury's verdict. But the principle is thoroughly settled that the determination of the issuable facts is no concern of an appellate court, provided there is sufficient evidence upon which the verdict and judgment can be based. (*Bruington v. Wagoner,* 100 Kan. 10, id. 100 Kan. 439, 164 Pac. 1057; *Wideman v. Faivre,* 100 Kan. 102, 163 Pac. 619.)

Whether Mary L. Clark was a *bona fide* creditor of her husband for a preëxisting indebtedness and was merely less indulgent and more diligent in looking out for her own interests as a creditor of her husband than other creditors, or whether she was merely acting a part to assist her husband in hindering, delaying and defrauding the plaintiff—these were jury questions which, upon competent and sufficient, though doubtful testimony, have been resolved in defendant's favor by the general verdict, and there is no essential conflict between the general verdict and the special findings of the jury. Counsel for plaintiff say that defendant's story about having advanced moneys to her husband years ago, and of which she kept no accurate account, "looks exceedingly fishy." It may do so, and yet we all know—some of us within our own experience—that wives frequently do that very thing, and it was for the jury and the trial court, not for appellate judges, to determine whether her claims were genuine or spurious, and notwithstanding the poor showing defendant made on cross-examination (*Matassarin v. Street Railway Co.,* 100 Kan. 119, 120, 163 Pac. 796), she presented sufficient affirmative evidence to support her contention, and the controversy over the facts is closed. (*Mitchell v. Simpson,* 62 Kan. 343, 348, 349, 63 Pac. 440.)

Fault is found with the instructions given and with those refused by the trial court, but those given appear to have correctly defined the law applicable to the case and to have omitted nothing of any importance urged by plaintiff. The jury were clearly and simply advised that if the conveyance of the property by Clark to his wife, or from Clark to his daughter and from the

Brecheisen v. ·Clark.

latter to Clark's wife, was made through any understanding or agreement with the intention of Clark *and his wife* to hinder or delay or defraud the plaintiff, their verdict should be for the plaintiff. This feature of the instructions was elaborated, and fully covered plaintiff's theory of the case. Of course, the court very properly gave instructions covering defendant's theory of the case, to the effect that a debtor in failing circumstances may prefer one *bona fide* creditor to the exclusion of others, and regardless of the debtor's motives, and even though the creditor may know that the debtor intends thereby to defraud other creditors. One such instruction continued—

"And you are instructed that the fact that such creditor is the wife of the debtor, does not change the rule, for if a wife is a *bona fide* creditor of her husband, she has a right to expect and to receive security or pay- ment from him, or out of his estate, the same as any other creditor, and ·he has a right to prefer her to other.creditors by transferring real estate or other property at a fair price in payment of her claim against him, so long as she acts in good faith. And while the fact of the relationship existing between the parties may be taken into consideration by you, yet the conveyance cannot be overturned on account of the mere fact that it is between husband and wife, even though he is in failing circumstances."

After the jury had deliberated for many hours, the court gave an additional instruction—

"That is to say, that if G. W. Clark intended by this transaction or the effect of it was to hinder, delay or defraud his creditors, then the transfer would be bad as to him, and if Mary L. Clark's participation in the trans- fer was with knowledge of such fact, or with knowledge of such facts as would put a reasonably prudent person upon inquiry, and still with such knowledge participated in the transaction for the purpose of assisting the defendant, G. W. Clark, in his purpose, then the transfer should be set aside as to her as well; but the mere fact that she knew the effect of the transfer would be to hinder, delay or defraud creditors would not make the transfer fraudulent as to her if she was acting in good faith for the purpose of paying or partially paying a *bona fide* indebtedness to her. And if she was acting in good faith for that purpose, then the transaction should not be set aside, even though you may find she knew what the con- sequences would be to the other creditors."

These criticized instructions are established law. The law has always favored the diligent creditor. So long as he acts in good faith to recover his due on a preëxisting and unsatisfied indebtedness, a creditor is entitled to accept what is coming to him, and need not concern himself as to the effect upon other creditors, nor with the motives of the debtor in preferring him

to others. The only limitations upon this principle are governed by the doctrine of *lis pendens* and the provisions of the bankrupt act, neither of which are here relevant.

In *McDonald v. Gaunt,* 30 Kan. 693, 695, 2 Pac. 871, Chief Justice Horton, speaking for the court, said:

"Again, one creditor has a right to demand and receive the property of his debtor in payment, though he may know that he will thereby withdraw the means of satisfying other creditors, and although the immediate inducement for receiving such payment be the fear or the knowledge that if he do not thus act, other creditors will intervene, and by the prosecution of their legal remedies or otherwise, deprive him of the means of satisfaction. The utmost good faith required of the creditor in seeking or receiving this advantage is, that he shall act with the real view to the security of his own actual debt; that he should allow adequate prices for the property, and that he shall not hold it for the debtor's benefit. (*Ford v. Williams,* 3 B. Mon. 550.) We have no inclination to overturn this well-settled doctrine."

In *Kennedy v. Powell,* 34 Kan. 22, 7 Pac. 606, a case whose principal features were like the one at bar, it was said:

"A wife who is a *bona fide* creditor of the husband is entitled to security or payment out of her husband's estate, the same as any other creditor, and although the husband is in failing circumstances, he may in good faith prefer her to the exclusion of other creditors by transferring real estate or other property to her at a fair price in payment of her debt against him." (syl. ¶ 1.)

In *Hasie v. Connor,* 53 Kan. 713, 37 Pac. 128, the syllabus, in part, reads:

"A creditor who in good faith obtains from an insolvent debtor property or security in payment of an honest debt, where the debtor may have acted with the design of delaying and defrauding other creditors, will not lose his preferences by reason of notice of the wrongful design of the debtor, providing his only purpose is to fairly obtain satisfaction or security for his own debt, and that he does not participate in the wrongful intent of the debtor. (syl. ¶ 2.)

"A creditor who in absolute good faith takes the property of his debtor at a fair valuation in payment of an honest debt, although the payment of his debt may absorb the entire property of the debtor, commits no fraud against anyone." (syl. ¶ 3.)

In *Gilmore v. Swisher,* 59 Kan. 172, 177, 52 Pac. 426, it was said:

"Nor would knowledge on the part of the vendee of a purpose of the mortgagors to defraud their creditors necessarily defeat or tend to defeat his mortgage. If the transaction between him and them was honest, if they really owed him the debt, and gave him security for that only, their

purposes in regard to the payment of their other debts could not affect his security. Nor was the plaintiff bound to inquire into the motives and purposes of the mortgagors. Although the relationship of the plaintiff to the mortgagors was a circumstance which it was proper for the jury to consider in determining the good faith or fraud connected with the mortgage, it was error to charge as a matter of law that such relationship afforded grounds for suspicion and called for satisfactory proof of good faith."

In *Bank v. Schuette,* 100 Kan. 45, 46, 163 Pac. 1073, it was said:

"Suppose it had been her [defendant's] intention to use the entire proceeds of the sale of her property in payment of her debt to the bank, and that other creditors had attempted to secure a lien upon the property by attachment on the ground that it was fraudulent for her to dispose of her property with the intent to pay no part of her indebtedness to them. The bank would hardly dispute her right in such case to prefer it to the exclusion of other creditors. An insolvent debtor may in good faith prefer some of his creditors to the exclusion of others. (*Tootle, Hoseu & Co. v. Coldwell,* 30 Kan. 125, 1 Pac. 329; *Kennedy v. Powell,* 34 Kan. 22, 25, 7 Pac. 606; *Miller v. Manufacturing Co.,* 53 Kan. 75, 35 Pac. 799.)"

To the same general effect were: *Farlin v. Sook,* 30 Kan. 401, 1 Pac. 123; *Schram v. Taylor,* 51 Kan. 547, 33 Pac. 315. (See, also, 20 Cyc. 472; 12 R. C. L. 577-580; and Notes in 11 L. R. A. 466; 31 id. 609, 618; and 36 id. 335, 339.)

No controlling significance attaches to the method by which Clark transferred the property to his wife. The worn-out notion still exists to some extent among laymen that to transfer property from spouse to spouse an intermediate conveyance to a third party is necessary. Of course, in Kansas, such circuity is superfluous. (Const., art. 15, § 6; Gen. Stat. 1868, ch. 62; Gen. Stat. 1915, ch. 72.)

Neither in the answers to special questions nor in the forty hours' confinement of the jury can anything be discerned which warrants discussion; and as no substantial error is indicated, the judgment is affirmed.