Statement.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

FORD AND OTHERS V. CHELF.

March 9, 1911.

Absent, Cardwell, J.

1. FRAUDULENT CONVEYANCES—*Anticipating Payments for Land.*—
In a suit to set aside a deed in which a son unites with a court commissioner in the conveyance of land to his mother, who had been substituted as purchaser in his place, on the ground that the deed was without consideration moving from the mother and in fraud of the creditors of the son, the fact that the mother anticipates the payment of the last bond given by the son for deferred payments of purchase money is no evidence of fraud, and if any explanation of the fact were necessary, it has been sufficiently made in the case in judgment.

2. EVIDENCE—*Recitals in Deed—Contradiction.*—The recital in a deed from a court commissioner that the purchase money for land conveyed was paid by the reported purchaser who united with the commissioner in making the deed to a third person may be contradicted by the grantee, who may show by parol that he paid the entire consideration.

3. FRAUD—*Relationship as Badge—Scrutiny.*—Relationship is not a badge of fraud. There is no law which forbids persons standing in near relations of consanguinity, affinity or business from dealing with each other, or which requires them to conduct their business with each other differently from the manner in which they conduct it with other persons. But when fraud is charged the dealings between near relations will be closely scrutinized, as secret trusts are more likely to exist between them than with strangers.

Appeal from a decree of the Circuit Court of Henrico county. Decree for the complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*James L. Shelton,* for the appellants.

*H. St. John Coalter,* for the appellee.

Harrison, J., delivered the opinion of the court.

In March, 1908, the appellee, T. W. Chelf, obtained against the appellant, J. P. Ford, a judgment for $2,500, subject to two credits, as of March 12, 1908, aggregating $1,271. On the 19th day of March, 1908, the appellant, J. P. Ford, united with John Howard, Jr., special commissioner of the Chancery Court of Richmond, in a deed conveying to Ellen Ford, his mother, two tracts of land in Henrico county containing twenty-four acres and eighteen and forty-four one-hundredths acres, respectively, and designated on a plat as lots Nos. 8 and 9. These lots had been sold under a decree of the chancery court at the aggregate price of $1,061, one-fourth cash and the balance with interest at six, twelve and eighteen months.

The appellee, T. W. Chelf, has filed the bill in this case, alleging that this deed from his judgment debtor, J. P. Ford, to his mother, Ellen Ford, was without consideration, and made for the purpose of hindering, delaying and defrauding him, and asking that it be declared null and void, and that the two lots thereby conveyed be decreed to be the property of the grantor, J. P. Ford, and subject to the payment of his judgment.

The defendants, J. P. Ford and Ellen Ford, each filed a separate answer, emphatically denying all fraud or wrongdoing of any sort, and alleging that the defendant, Ellen Ford, had been substituted by the court, as purchaser, in the room and stead of the original purchaser, J. P. Ford; that she had paid, with her own means, the entire purchase

money; and that she was, therefore, the owner of the property conveyed to her by the deed sought to be set aside.

The record shows that the appellant, J. P. Ford, made the commissioners of the chancery court an offer of $1,061 for the two lots in controversy, and executed his three notes for the deferred payments, but that before he had made the cash payment, his health, both physical and mental, became so impaired that he had to abandon all attempt to further transact business. At this time J. P. Ford held the legal title to several houses in Richmond that he had built for speculation. Every dollar of the cost of the lots and the cost of the buildings thereon was borrowed. The property was heavily mortgaged on that account, and in addition to these mortgages his father held his notes for considerable sums that he had loaned him, which were used in paying for the erection of the houses. The evidence is perfectly clear that at the time of the transaction under consideration the appellant, J. P. Ford, was not worth a dollar, had no credit or earning capacity. In this dilemma, J. P. Ford told his mother that he thought the Henrico lots a good investment, that they would have to be resold, and proposed that she should take them and have herself substituted in his place as the purchaser. After conference with her husband, and inspecting the lots, the appellant, Ellen Ford, became the substituted purchaser, paid the cash payment, and, subsequently, through her husband, paid off her son's deferred purchase money notes. The undisputed evidence satisfactorily shows that the appellant, Ellen Ford, was able to pay for the lots, and, as already seen, that her son was wholly unable to pay for them.

It is insisted by the appellee that the lots were paid for out of the surplus proceeds of the city of Richmond property owned by the appellant, J. P. Ford, after the mortgages thereon had been satisfied. The evidence, as to which

no contradiction is attempted, shows that when these houses were built, the father of J. P. Ford loaned him two sums, one of $1,306 and the other $1,942, to enable him to pay for and complete the buildings, with the distinct understanding and agreement that the notes given for these two loans were to be paid out of any surplus remaining from the sale of these several houses after the mortgages thereon were satisfied. The evidence shows that the surplus arising from the sale of these houses was paid by the real estate agent who made the sales to the father of J. P. Ford, and that the amount was duly credited on J. P. Ford's notes held by him, in accordance with the agreement between himself and his son, leaving the son still in his father's debt. There is no evidence in the record that casts the slightest suspicion upon the *bona fides* of this transaction, which sets at rest the contention that this surplus belonged to the appellant, J. P. Ford, and was fraudulently applied to the payment of the purchase price of the property in Henrico, which was bought, as substituted purchaser, by the appellant, Ellen Ford.

The fact that Ellen Ford anticipated the maturity of the last payment due on the property is relied upon as indicating fraud.

The appellant says that she thought she had an opportunity to sell the property at an advance, and that she made the last payment so that she would be in a position to make the sale. This is a sufficient explanation for anticipating the payment, if one was necessary in this case. It is not an uncommon thing for purchasers to discharge their obligations before they are due, and there is nothing in this case to suggest that appellant was moved by any fraudulent purpose in doing so.

The deed from the special commissioner to the appellant, Ellen Ford, recites that the purchase money was paid by

J. P. Ford, and this circumstance is relied on as showing that Ellen Ford had not paid for the property. J. P. Ford was the original purchaser, as shown by the record. The payments on the property were made to the real estate agent who attended to the matter for the commissioners of the court, and the draughtsman of the deed does not claim to know who actually paid the purchase money. It is manifest that he was merely recording the fact that the property conveyed had been paid for. In view of the uncontradicted evidence in the case, that J. P. Ford was wholly unable to have paid one dollar of the purchase money, the recital relied on entirely fails to support the contention that Ellen Ford, the grantee in the deed, did not pay for the property.

Stress is laid upon the relationship of the parties, as showing a fraudulent intention.

"Relationship is not a badge of fraud. There is no law which forbids persons standing in near relations of consanguinity, affinity, or business, from dealing with each other, or which requires them to conduct their business with each other differently from the manner in which they conduct it with other persons. But as fraud is generally accompanied by a secret trust, the debtor usually selects some person in whom he can repose secret confidence. And as this trust and confidence is more likely to exist between relatives, or those who occupy confidential relations, their transactions with each other, when fraud is charged, will be more closely scrutinized." *Johnson* v. *Lucas,* 103 Va. 36, 48 S. E. 497.

The evidence in this case has been carefully considered, and the transaction alleged to be fraudulent has been closely scrutinized without finding any ground upon which the conclusion can be rested that the deed of March 19, 1908, to the appellant, Ellen Ford, was without consideration and made to hinder, delay and defraud the appellee. There is no actual proof of fraud, and the suspicious cir-

cumstances relied on are wholly insufficient to establish the charge with that degree of certainty which the law requires.

The decree complained of must, therefore, be reversed, and this court will enter such decree as the circuit court ought to have entered dismissing the plaintiff's bill.

*Reversed.*