SECURITY STATE BANK, RESPONDENT, *v.* McINTYRE, ADMX., ET AL., APPELLANTS.

(No. 5,486.)

(Submitted June 21, 1924. Decided July 11, 1924.)

[228 Pac. 618.]

*Creditors' Suits — Fraudulent Conveyances — "Badges of Fraud"—Insolvency—Inadequacy of Consideration—Equity Evidence—Record—Implied Findings.*

Fraudulent Conveyances—Conditions Under Which Grantor Becomes "Debtor."  .
  1.   Where the owner of city lots had sold them with the understanding that she was to remove a building thereon within a given time and removal thereof was prevented by litigation for several years, during which time the purchaser was adjudged to be entitled to ground rental which remained unpaid, she knew that she was indebted to the purchaser in an amount which was constantly

[71 Mont. 186.]

increasing, and therefore was a debtor within the meaning of section 8598, Revised Codes of 1921, at the time she transferred practically all of her property to her daughter.

Same—Intent to Defraud—"Badges of Fraud."

2. Since a fraudulent intent in the transfer of property to defeat claims of creditors is the result of mental process, generally the only means by which to ascertain whether such intent existed at the time of the complained of transfer is by considering the acts of the party which experience has demonstrated to have fraudulent aspects, denominated "badges of fraud," such as insolvency, inadequacy of consideration, *etc.*

Same—Debtor Retaining Property Subject to Seizure—Other Conveyances not Deemed Fraudulent.

3. Where a debtor retains ample property subject to immediate seizure and fair sale, any conveyance of other property does not amount to fraud on his creditor, and no inference of an intent to defraud can be drawn therefrom; hence the *complaint in an action in the nature of a creditor's bill* must allege that at the time the conveyance sought to be set aside was made, the debtor did not have other property subject to seizure out of which the debt could be satisfied.

Same—Several Conveyances by Debtor at Different Times—When Deemed One Transaction, When not.

4. Where several conveyances of property are made by a debtor at different times, the fact that one of them was executed with intent to defraud creditors does not render the others void, if they were separate and independent transactions; otherwise if they are so interrelated as to constitute parts of the same transaction, and particularly if made to the same grantee.

Equity—Implied Findings.

5. On appeal in an equity case, where the trial court failed to make a finding necessary to support the judgment, the supreme court will, under the doctrine of implied findings, treat the case as though such finding had been made.

Fraudulent Conveyances—Money *in Custodia Legis* not Subject to Seizure.

6. A solvency which the law cannot subject to the payment of the debts of an unwilling debtor is not distinguishable from absolute insolvency; hence since money or other property *in custodia legis* is not subject to seizure by ordinary legal process, the claim of defendant that at the time of an alleged fraudulent transfer of property there was a sufficient amount of money in the hands of the court to pay the demand of plaintiff which was subsequently awarded to be her property was unavailing as tending to show that a sufficient amount was retained to pay the debt.

Findings—Appellant has Burden of Showing That Evidence Preponderates Against.

7. Appellant in an equity case has the burden of showing that the evidence preponderates clearly against a finding attacked as not being sustained by it.

Appeal—Equity Cases—Record—Evidence must be Presented in Form of Question and Answer.

8. Under subdivision 3 of Rule VII of the supreme court, in equity cases and matters of an equitable nature where questions of fact are presented for review, the testimony must be presented by question and answer; if not so presented, the appellant is not entitled to have the evidence considered for any purpose, and in such

[71 Mont. 186.]

circumstances, if it does consider it, the appellate court will place greater reliance upon the court's findings than would otherwise be necessary.

Fraudulent Conveyances—Evidence—Sufficiency.

9.   Evidence in an action to set aside a transfer of property as in fraud of plaintiff creditor by a mother to her daughter, *held* sufficient to warrant a finding that at the time the transfer was made the grantor was insolvent and that her insolvency was a badge of fraud.

Same—Interested Witnesses—Court may Disregard Testimony.

10.   Where a witness is directly and pecuniarily interested in the result of an action and his testimony may furnish the basis for a recovery in his favor, and the attendant circumstances are such as to cast suspicion upon the transaction narrated by him, the court may disregard his testimony, courts not being bound to believe all the testimony they hear.

Same—Agreement for Future Support not Valid Consideration for Conveyance, as Against Creditors.

11.   An agreement for future support of a mother by her daughter is not a valid consideration for the transfer of property to her as against the claim of an existing creditor.

Contracts in Restraint of Marriage Void.

12.   A contract in restraint of marriage of any person other than a minor is void under section 7562, Revised Codes.

Same—Consideration—Natural Love and Affection—Transfer Voluntary.

13.   So far as a transfer attacked as fraudulent against creditors depends upon the consideration of natural love and affection it must be treated as merely voluntary.

Same—Transactions Between Near Relatives—How Viewed by Courts.

14.   Transfers of property between near relatives are subject to the most rigid scrutiny, and the fact of such relationship is to be considered with other evidence as reflecting the intention with which the transfers were made.

Same—Inadequacy of Consideration—Evidence—Sufficiency.

15.   Where plaintiff's debtor transferred property valued at $35,000 to her daughter, who for years had acted as the grantor's confidential adviser and business manager, for a consideration which did not exceed half its value, leaving the creditor without any direct means of satisfying its claim, the court was warranted in finding that the transfer was fraudulent and that the grantee participated actively in perpetrating the fraud.

Same—Preference of One Creditor—When Badge of Fraud.

16.   While a debtor may prefer one creditor over another, where he transfers to one creditor in payment of a debt property the value of which is greatly in excess of the amount due, it is a badge of fraud affording strong evidence thereof.

*Appeal from District Court of Hill County, in the Eighteenth Judicial District; Carl D. Borton, Judge of the Seventeenth District, presiding.*

ACTION by the Security State Bank of Havre against Laura McIntyre, as administratrix of the estate of Margaret Mc-

Intyre, deceased, Laura McIntyre and Emma J. Des Rosier Judgment for plaintiff. Defendants appeal. Affirmed.

*Mr. C. A. Spaulding* and *Mr. Victor R. Griggs,* for Appellants, submitted a brief and argued the cause orally.

While fraud is something which cannot always be shown by direct evidence, but may be shown from all the surrounding facts and circumstances connected with the case, at the same time it cannot be presumed but must be proven. (*Bernheimer* v. *Rindskopf,* 116 N. Y. 428, 15 Am. St. Rep. 414, 22 N. E. 1074; *Shultz* v. *Hoagland,* 85 N. Y. 464, 469; *Koopman* v. *Mansolf,* 51 Mont. 48, 149 Pac. 491.) When actual fraud is not shown it must be deduced from what the courts term "badges of fraud." (Wait on Fraudulent Conveyances, Chap. 16; 12 Ruling Case Law, 476–490.)

None of these badges of fraud standing alone is sufficient to set aside a conveyance as fraudulent, and in order to warrant the court setting aside a conveyance on the grounds of fraud, two or more of these so-called badges of fraud must exist. In the case at bar the court apparently deduced fraud from three so-called badges of fraud only, namely: Relationship, inadequate consideration and a contemplated indebtedness.

Relationship: Relationship of the parties in itself is not *prima facie* evidence of fraud, but merely a circumstance to be taken into consideration and one that requires such transactions to be more closely scrutinized than others. (*Wilson* v. *Harris,* 21 Mont. 374, 54 Pac. 46; *Lambrecht* v. *Patten,* 15 Mont. 260, 38 Pac. 1063; *Shepherd* v. *First National Bank,* 16 Mont. 24, 40 Pac. 67), and the following show this to be the position of the courts and text-writers generally: *Webster* v. *Clopeck Fish Co.,* 51 Okl. 702, 152 Pac. 379; *Wimberly* v. *Winstock,* 46 Okl. 645, 149 Pac. 238; *Klein* v. *Gallin,* 136 App. Div. 382, 120 N. Y. Supp. 1036; *Winfrey's Trustee* v. *Winfrey,* 150 Ky. 138, 150 S. W. 42; Wait on Fraudulent Conveyances, 435, 1011; Bigelow on Fraudulent Conveyances, 222.

Inadequacy of consideration: Wait on Fraudulent Conveyances, 413, lays down this rule: "The mere proof of inadequacy of price by itself has been insufficient to implicate the vendee in the fraudulent intent, or to impeach his good faith, and inadequacy of consideration unless extremely gross, does not prove fraud. It must appear that the price was so manifestly inadequate as to shock the moral sense and create in the mind at once, upon its being mentioned, a suspicion of fraud." (See, also, 12 R. C. L., sec. 11, Fraudulent Conveyances, p. 478; 27 Corpus Juris, sec. 135, p. 484; *McGhee* v. *Wells,* 57 S. C. 280, 76 Am. St. Rep. 567, 35 S. E. 529; *Brown* v. *Case,* 41 Or. 221, 69 Pac. 43; *Flook* v. *Armentrout's Admr.,* 100 Va. 638, 42 S. E. 686; *Tyson* v. *Southern Cotton Oil Co.,* 181 Ala. 256, 61 South. 278; *Pope* v. *Brandon,* 2 Stew. (Ala.) 401, 20 Am. Dec. 49; *State* v. *Mason,* 112 Mo. 374, 34 Am. St. Rep. 390, 20 S. W. 629.)

It is true that an agreement for future support is not a sufficient consideration, and is fraudulent against creditors, yet support previously actually furnished is a valid consideration and is not fraudulent. (*Officer* v. *Swindlehurst,* 41 Mont. 126, 108 Pac. 583; *Ryan* v. *Simms,* 147 Minn. 98, 179 N. W. 683; *Potts* v. *Mehrmann,* 50 Cal. App. 622, 195 Pac. 941; *Kelsey* v. *Kelley,* 63 Vt. 41, 22 Atl. 597, 13 L. R. A. 640; *Harris* v. *Brink,* 100 Iowa, 366, 62 Am. St. Rep. 578, 69 N. W. 684; *Gregory* v. *Lamb,* 101 Ky. 727, 42 S. W. 339; *Walker* v. *Cady,* 106 Mich. 21, 63 N. W. 1005; *Hays* v. *Montgomery,* 118 Ind. 91, 20 N. E. 646.) Under the record here it does not admit of doubt that the entire consideration for the transfers in question was a pre-existing debt, being sufficient to support a conveyance. (Bigelow on Fraudulent Conveyances, 551.)

Insolvency: The court did not find and the evidence does not disclose that Margaret McIntyre at the time of the transfers was insolvent. It may be conceded that it is not necessary to show an actual indebtedness, but that it is sufficient to show a contemplated indebtedness, providing there are other facts and circumstances sufficient to sustain a presumption of fraud

But indebtedness or a contemplated indebtedness standing alone is not sufficient. (Bigelow on Fraudulent Conveyances, 210.)

The cases hold uniformly that a conveyance, even if voluntary, will not be disturbed where the grantor retained sufficient property to pay for the existing debts in the absence of actual intent to defraud. (*German-American Nat. Bank* v. *Martin*, 277 Ill. 629, 115 N. E. 721; *Fort-Collins Nat. Bank* v. *Whitton*, 63 Colo. 9, 164 Pac. 309; *Hessian* v. *Patten*, 154 Fed. 829, 83 C. C. A. 545; *Morris* v. *Fidelity Mtg. Bond Co.*, 187 Ala. 262, 65 South. 810; *Evans* v. *Sparks*, 170 Cal. 532, 150 Pac. 372; *Underleak* v. *Scott*, 117 Minn. 136, 134 N. W. 731; *Seeley* v. *Ritchey*, 76 Neb. 427, 110 N. W. 1105.) And this is so even though the grantor subsequently becomes insolvent. (*Wilks* v. *Graeacen*, 155 App. Div. 623, 140 N. Y. Supp. 851; *Buthenthal* v. *Stone Bros.*, 59 Fla. 161, 51 South. 851; *Varn* v. *Chapman*, 137 Ga. 300, 73 S. E. 507; *Miles* v. *Monroe*, 96 Ark. 531, 132 S. W. 643.)

*Messrs. Norris, Hurd, Rhoades & Hauge*, for Respondent, submitted a brief; *Mr. H. C. Hall*, of Counsel, argued the cause orally.

While fraud, of course, is never presumed, yet when the various incidents and circumstances surrounding a transaction are picked out and proven, fraud is made out and the transfer held void. Such incidents and circumstances are called in law "Badges of Fraud." (27 C. J. 483.) The following have been held by the courts and text-writers to constitute badges of fraud: Fictitious consideration, inadequacy of consideration, transfer in anticipation of or pending suit, insolvency or indebtedness of debtor, transfer of all of debtor's property, retention of possession, reservation for grantor, relationship of parties, existence of indebtedness, existing or contemplated, amount and nature of consideration not clearly shown. (27 C. J. 483 *et seq.;* 12 Ruling Case Law, 476–490; Wait on Fraudulent Conveyances, Chap. 16.) Such badges of

fraud are not conclusive, but are more or less weak or strong according to their nature and the number concurring in the same case. A concurrence of several always makes out a strong case. (Bump on Fraudulent Conveyances, p. 78.)

Relationship: The law in respect to transfers between relations is settled in this state by a long line of decisions. (See *Keller* v. *Flanagan,* 66 Mont. 144, 213 Pac. 222; *Lambrecht* v. *Patten,* 15 Mont. 260, 38 Pac. 1063; *Reid* v. *Hennessy Merc. Co.,* 45 Mont. 383, 386, 123 Pac. 397; *Harrison* v. *Riddell,* 64 Mont. 466, 210 Pac. 460; *Koopman* v. *Mansolf,* 51 Mont. 48, 149 Pac. 491.)

The rule there enunciated and which commends itself to most courts is that the relationship of the parties in the transaction as parent and child is not considered in law as a badge of fraud, but is simply a circumstance proper to be shown, and which when shown calls for close scrutiny and clear explanation of the transaction, especially when accompanied by other facts or circumstances which the law holds to be badges of fraud. (27 C. J. 646, 647; 12 R. C. L. 488–490.)

Consideration: Since an agreement in restraint of marriage is void and illegal (Rev. Codes 1921, sec. 7562), such consideration will not support a conveyance or transfer of a debtor's property, as against creditors. (27 C. J. 527, 528; *Kolb* v. *Mall,* 187 Iowa, 193, 174 N. W. 226.)

As to the future support of her mother by the daughter such a consideration is fraudulent as to creditors. (27 C. J. 530, and cases cited; *Officer* v. *Swindlehurst,* 41 Mont. 126, 108 Pac. 583; *Baxter* v. *Baxter,* 19 Cal. App. 238, 125 Pac. 359.)

In the absence of any evidence as to the value of alleged past services, of any evidence that Margaret expected to pay or Laura expected to receive anything for such services, and, in view of the express statement of appellant as a witness in her own behalf that the consideration was future support which was never given, it seems clear that the transfers are

wholly without any consideration whatsoever.   (27 C. J. 530, 531; *Lawson* v. *Funk,* 108 Ill. 502.)

Insolvency: That Margaret McIntyre was insolvent at the time of her death is beyond dispute, and under some authorities this affords a presumption of insolvency at the time of the transfer.   (*Strong* v. *Lawrence,* 58 Iowa, 55, 12 N. W. 74; *Carlisle* v. *Rich,* 8 N. H. 44.)

It is essential to the validity of a voluntary conveyance as against existing creditors that the property retained by the donor on making the conveyance is readily available for the satisfaction of their claims by legal process, and a solvency which it cannot employ in the payment of the debts of an unwilling debtor is certainly not distinguishable by any valuable difference from insolvency. If the property retained is such that it cannot be sold under execution or attachment, or is located in another state, or is concealed in the names of third persons, or is encumbered so as to necessitate litigation to reach the property, or is such as cannot be reached by creditors without some affirmative action on the part of the debtor himself, it will not avail.   (27 C. J. 552; *Adams* v. *Prather,* 176 Cal. 33, 167 Pac. 534; *Drake* v. *Ward-Truitt Co.,* 149 Ga. 54, 99 S. E. 125; *Eiler* v. *Crull,* 112 Ind. 318, 14 N. E. 79; *Blake* v. *Sawin,* 10 Allen (Mass.), 340; *Finch* v. *Cecil,* 170 N. C. 114, 86 S. E. 991; *Eddy* v. *Baldwin,* 32 Mo. 369; *Walker* v. *Loring,* 89 Tex. 668, 36 S. W. 246; *Williams* v. *Banks,* 11 Md. 198.)

Actual insolvency is not necessary under any circumstances to avoid a transfer. A voluntary conveyance may be fraudulent as to creditors, although the grantor was not actually insolvent at the time he executed the conveyance. It is generally held that, if the grantor at the time of the execution of a voluntary conveyance, although not actually insolvent, is in circumstances which eventually end in insolvency the conveyance is void, especially if the insolvency follows in a short time after the conveyance.   (*Hauk* v. *Van Ingen,* 196 Ill. 20, 63 N. E. 705; *Everett* v. *Read,* 3 N. H. 55;

*Arnold* v. *Peoples,* 13 Tex. Civ. 26, 34 S. W. 755; *Lionberger*
v. *Baker,* 88 Mo. 447; *Weeks* v. *Hill,* 88 Me. 111, 33 Atl. 778;
*Crapster* v. *Williams,* 21 Kan. 109.)

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

In 1915 Mrs. Margaret McIntyre owned a large amount of
property in Hill county, including lot 12 and the west half
of lot 13 in block 9, original town site of Havre, upon which
parcels of ground was situated the McIntyre Opera House.
In December, 1915, she leased the opera house to Koerner
& Needham for the term of three and a half years at a rental
of $100 per month. Later during the term W. H. Wheeler
became the assignee of the lease, kept the covenants and con-
tinued in possession of the building. In October, 1916, Mrs.
McIntyre sold lot 12 and the west half of lot 13 to the Security
State Bank for $15,000, reserving the opera house building,
which she agreed to remove in the spring of 1917, but when
she undertook to carry out the agreement Wheeler secured
an injunction which restrained her from removing it until the
expiration of the lease. (*Wheeler* v. *McIntyre,* 55 Mont. 295,
175 Pac. 892.) About November, 1917, a controversy arose
between the bank and Mrs. McIntyre over the title to the
building, and, to protect his lease, Wheeler filed a bill of in-
terpleader and under an order of court paid the rental into
court. That action was not determined until January 3, 1920,
when a judgment was entered which awarded the building to
Mrs. McIntyre and to the bank $100 per month as ground
rental for the time it was kept out of possession of the lots
after November 1, 1917. The building was finally removed
October 15, 1922. In the meantime Mrs. McIntyre conveyed
property to her daughter Laura, as follows: November 23,
1918, her real estate and two dwelling-houses, all of the aggre-
gate value of $27,500 or more; January 14, 1919, $7,000 in
cash, and December 10, 1919, the opera house building which
then had a value of approximately $1,000.

On March 31, 1920, Mrs. McIntyre died intestate, leaving
[1] an estate valued at $300. Her only heirs were her
daughters Laura and Emma (Mrs. Des Rosier), and her only
indebtedness, that due to the bank for ground rental as indi-
cated above. Laura McIntyre was appointed administratrix
of her mother's estate and in due time gave notice to creditors.
The bank presented its claim which was rejected in part.
Within the statutory period it instituted an action and such
proceedings were had therein that a judgment was rendered
in its favor for $5,445.55, which amount was adjudged to be a
valid claim against the estate. Nothing was paid on the judg-
ment, and it appearing that there were practically no funds
in the estate, this action in the nature of a creditor's bill was
commenced to subject to the payment of the bank's claim the
property transferred by Mrs. McIntyre to her daughter
Laura. The trial of the cause resulted in a judgment in favor
of the bank, and from that judgment Laura McIntyre prose-
cuted this appeal.

The trial court found that Mrs. McIntyre transferred her
property to her daughter with the intention to defraud the
bank and hinder and delay it in the collection of its claim,
and that Laura McIntyre knew all of the facts and entertained
the same fraudulent intent. It is the contention of the appel-
lant that the evidence does not sustain this finding.

Although at the time the opera house building was trans-
ferred, the controversy between Mrs. McIntyre and the bank
over the title to it had not been determined, Mrs. McIntyre
did know that she had not delivered possession of the lots sold
to the bank as she had agreed to do; that from the very nature
of the case the bank had a just claim against her for reason-
able ground rental, and that this claim would be augmented
from month to month until the building was removed. Under
these circumstances she was a debtor to the bank within the
meaning of section 8598, Revised Codes, and the bank was
her creditor. (Sec. 8599.)

Our theory of property rights has its foundation in the principle that, as a general rule, everyone has dominion over his own property and may make any disposition of it which accords with his own goodwill and pleasure and does not exceed the limits prescribed by law. He may sell it or give it away and is not deprived of his dominion over it or of his power to control it, merely by reason of the fact that he is indebted or even insolvent. It is only when he disposes of his property in fraud of his creditors that the law takes cognizance of his transactions.

Section 8603, Revised Codes, so far as applicable here, provides: "Every transfer of property * * * made * * * [2] with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor," *etc.* It is the fraud in the transaction, and not the fact of indebtedness, which gives rise to an action to set aside the conveyance and subject the property to the creditor's claim. But, except as otherwise provided in section 8604—a statute with which we are not now concerned—"the question of fraudulent intent is one of fact and not of law" (sec. 8606); and since fraudulent intent is the result of mental process, there are generally no means by which to ascertain whether it exists except by considering the acts of the parties engaged in the transaction and making proper deductions therefrom in accordance with principles which have been established by common observation and experience. Experience has demonstrated that certain acts have fraudulent aspects and for convenience they are referred to in the books as "badges of fraud." Financial embarrassment, heavy indebtedness and insolvency are generally classed as badges of fraud, with inadequacy of consideration, false recitals, concealment, and the like.

1. Insolvency: Though decided cases are to be found to the [3] contrary, we agree with counsel for appellant that the great weight of authority supports the rule that a creditor who is not injured thereby may not complain of any disposition

which his debtor makes of his property. Fraud without injury or injury without fraud will not support an action of this character; unless they coexist, the courts will not render relief. (*Kennedy* v. *Bank*, 107 Ala. 170, 36 L. R. A. 308, 18 South. 396.) Common sense seems to compel the conclusion that if the debtor retains ample property subject to seizure and fair sale within the same jurisdiction, any conveyance of other property by him cannot amount to fraud on his creditor and no inference of an intent to defraud can be drawn therefrom. (*Albertoli* v. *Branham*, 80 Cal. 631, 13 Am. St. Rep. 200, 22 Pac. 404.)

In Bigelow on Fraudulent Conveyances, 210, the rule is stated as follows: "It is not enough, even for a *prima facie* case, if we accept the more general doctrine, to show that the grantor, being in debt, made a voluntary alienation. Indeed, to show that a man was deeply in debt when he made a gift is in itself nothing, for he may still have, after the gift, ample means out of which payment may be enforced. The evidence should go so far as to show that the grantor was either *"alieno aere prae gravatus,* weighted down, embarrassed with debt, or in debt to such an extent that to withdraw the property in question from the claims of creditors would defeat or delay them."

Likewise the rule has been deduced that to state a cause of action for setting aside a conveyance as fraudulent, facts must be alleged showing that the conveyance was made in such manner and under such circumstances as to have that effect; hence it must be made to appear that at the time the conveyance was completed, the debtor did not have other property subject to immediate seizure out of which the debt could be satisfied. (Bump on Fraudulent Conveyances, 4th ed., 548; 2 Moore on Fraudulent Conveyances, 851; 12 R. C. L. 661.) In this instance the sufficiency of the complaint is not questioned.

It is the general rule, also, that where several conveyances [4] of property are made by a debtor at different times, the fact that one of them is executed with intent to defraud credi-

tors will not render the others void, if they are separate and independent transactions. But it is otherwise if they are so interrelated as to constitute parts of the same transaction, and particularly if made to the same grantee. (27 C. J. 466.)

Mrs. McIntyre disposed of her property to her daughter by three transfers, the first and second of which disposed of practically all of it and were made within less than two months. Although the trial court did not make any specific finding that the three transfers were in fact but parts of one transaction, it did treat them as one, and in the brief of appellant they are apparently so treated. If, however, a finding **[5]** that they were but parts of one transaction were necessary to sustain this judgment, the case would be treated as though the finding had been made, under the doctrine of implied findings which prevails in this jurisdiction. (*Thomas* v. *Ball,* 66 Mont. 161, 213 Pac. 597.)

If, then, the conveyance of Mrs. McIntyre's property to her **[6]** daughter is to be deemed to be completed upon the transfer of the opera house building, no difficulty whatever is experienced upon this phase of the case; for at that time (December 10, 1919) she had withdrawn all money from the plaintiff bank. She had remaining her claim upon the $2,600 then in the custody of the court, representing the rentals which Wheeler had paid on the opera house building, and her indebtedness to the bank then accumulated amounted to $2,600 and was increasing constantly at the rate of $100 per month. It is not sufficient to say that the money in court was later adjudged to belong to Mrs. McIntyre and in amount was equal to her then accumulated indebtedness to the bank. The law looks to practical results, and a solvency which it cannot subject to the payment of the debts of an unwilling debtor is not distinguishable from absolute insolvency so far as practical results are concerned. (*Adams* v. *Prather,* 176 Cal. 33, 167 Pac. 534.) Hence the rule that to avoid a decree setting aside a conveyance as fraudulent it must appear that the property retained by the debtor was sufficient in amount,

easily accessible and subject to immediate attachment or execution at the suit of a creditor. (27 C. J. 552; 12 R. C. L. 661.)

It is elementary that money or other property *in custodia legis* is not subject to seizure by ordinary legal process, and it is equally true that money deposited in court by order of court to abide final determination as to its ownership is in the custody of the law. (*Mattingly* v. *Grimes,* 48 Md. 102; *Corbitt* v. *Farmers' Bank,* 114 Fed. 602.) So that we may dismiss from further consideration the claim that Mrs. McIntyre retained the money paid into court by Wheeler, for until the interpleader action was finally determined the title to that money was in litigation.

If, then, this claim upon the deposit in court constituted the only property retained by Mrs. McIntyre, the trial court was fully justified in finding that by conveying the properties mentioned above she rendered herself absolutely insolvent so far as the bank was concerned.

But appellant contends that her mother retained other property. She testified that at the time the opera house building was transferred to her, Mrs. McIntyre had $2,500 on deposit in the Farmers' State Bank of Havre, and also had from $1,200 to $1,500 in cash on her person. But the trial court refused to accept this testimony as sufficient to establish the fact sought to be established by it. Under the situation most [7] favorable to her, appellant would be compelled to sustain the burden of showing that the evidence preponderates clearly against the trial court's finding. (*Hartnett* v. *Sterling,* 67 Mont. 46, 214 Pac. 330; *Richardson Grain Separator Co.* v. *Valier Elevator Co.,* 67 Mont. 227, 215 Pac. 237; *Wood* v. *Robbins,* 67 Mont. 409, 215 Pac. 1101.) However, appellant is not in the most favorable situation; indeed, she is not in a position to ask this court to give any consideration whatever to the evidence. Subdivision 3, Rule VII of the Rules [8] of this court provides: ''In equity cases and in matters and proceedings of an equitable nature, wherein questions of fact arising upon the evidence presented in the record are to

be submitted for review by this court, the testimony relating
to such questions shall be presented by question and answer.''
In this instance all of the evidence is presented in narrative
form.

In *Koopman* v. *Mansolf*, 51 Mont. 48, 149 Pac. 491, this
court said: ''The purpose of the rule is to require appellant
in equity cases and proceedings of an equitable nature, to pre-
sent to this court the evidence involving controverted questions
of fact, in the exact words of the witnesses, to the end that
the duty imposed upon the court by section 6253 of the Re-
vised Codes [sec. 8805, Rev. Codes, 1921] may be properly
discharged. Speaking generally, observance of the rule is im-
perative, for, as has been frequently pointed out, the statute
requires this court, in the review of questions of fact in this
class of cases, to assume, as nearly as may be, the position of
the trial court and to make its examination accordingly. The
extent of the review is necessarily limited by the fact that an
important item of testimony, *viz.*, the appearance and demeanor
of the witnesses, cannot be embodied in the record. Hence due
allowance must always be made for the difference between the
probative value of the testimony as delivered by the living wit-
ness and the testimony of the witness as it is presented in the
printed record.''

Because of the failure or refusal to observe the rule, appel-
lant is not entitled as of right to have the evidence con-
sidered for any purpose (*Gilmore* v. *Ostronich*, 48 Mont. 305,
137 Pac. 378); and under the most liberal view we are obliged
to place greater reliance upon the trial court's findings than
otherwise would be necessary. (*Officer* v. *Swindlehurst*, 41
Mont. 126, 108 Pac. 583.)

In *Wilson* v. *Harris*, 21 Mont. 374, 440, 54 Pac. 46, 69, Mr.
Justice Hunt observed aptly: ''The jury and the judge of the
district court saw the witnesses and heard them testify. This
is of the greatest advantage, especially in cases of alleged
fraud.''

Notwithstanding appellant testified to the existence of this
[9]	asset amounting to from $3,700 to $4,000, she was unable

to say what became of the money, except that her mother
spent it, although she had managed her mother's business for
many years and because of physical infirmities Mrs. McIntyre
was unable to draw a check after December 14, 1919. Fur-
thermore, it will be borne in mind that appellant was the sole
beneficiary of her mother's bounty. She had received prop-
erty valued at from $35,000 to $45,000 under the circumstances
narrated. She alone was interested in maintaining the integ-
rity of the transaction and she alone would be affected ad-
versely if the conveyance were set aside. Under these circum-
stances the language of this court in *Reid* v. *Hennessy*
[10] *Mercantile Co.,* 45 Mont. 383, 123 Pac. 397, becomes
peculiarly pertinent. The court said: "A trial court is not
bound to believe all the testimony that it hears. The appear-
ance and demeanor of the witnesses, their manner of testify-
ing, and the probability or improbability of the truth of their
statements are all to be considered in connection with the other
facts and circumstances in the case. When the statements of
witnesses, although positive, and not directly contradicted by
other witnesses, are improbable, contradictory and inconsistent
in themselves, when they relate to alleged transactions with
persons who by death or absence are unable to dispute them,
when the witnesses are directly and pecuniarily interested in the
result of the controversy, and their testimony may furnish the
basis for a recovery in their favor, and the attendant circum-
stances are such as to cast suspicion upon the entire transac-
tion as narrated by them, the court may disbelieve such wit-
nesses and disregard their testimony."

We cannot say, and appellant is not in a position to ask
us to say, that the evidence preponderates against the finding
that at the time Mrs. McIntyre completed the transfer of the
property mentioned she was insolvent, and if insolvent, the
court was justified in treating the insolvency as a badge of
fraud.

2. Inadequacy of consideration: In answer to the charge
of fraud contained in the complaint, appellant in her answer

undertook to plead adequate consideration for the transfer of the property to her. She alleged that at divers times between November 2, 1907, and October 26, 1918, she advanced money to her mother to discharge indebtedness against her mother's property, to improve the property and pay taxes and insurance, in amounts aggregating $9,000; and also advanced to her mother $5,000 to erect a residence building; that she furnished support for her mother up to the time the transfer was made and promised to support her as long as Mrs. McIntyre lived; that she managed her mother's business for many years, and in order to do so and to furnish the proper support, it was necessary that she forego, and she did forego marriage though she had the opportunity to marry. She alleges that all these acts and things were done and performed by her at the special instance and request of her mother.

These several items, together with the love and affection of [11, 12] her mother for her, constitute the consideration relied upon. It is now conceded, however, as it must be, that an agreement for future support is not a valid consideration for the transfer as against the claim of an existing creditor (*Officer* v. *Swindlehurst,* above; 27 C. J. 530); and a contract in restraint of marriage of any other person than a minor is void. (Rev. Codes, sec. 7562.)

Notwithstanding the condition of the record and respondent's objection to our considering the evidence for any purpose, we have reviewed it so far as it touches upon this subject. It is fairly deducible therefrom that between November, 1907, and October, 1919, Laura McIntyre earned substantially $15,500, and that aside from the necessary expense of her own living, she contributed this amount to her mother, probably as loans or advances. She testified that she furnished the entire support for her mother during that period, though the actual cost or reasonable value of the support is not given. The evidence discloses, however, that during the same period Mrs. McIntyre had an income from rentals amounting approximately to $17,000, and that she received

from the sale of the lots· to the bank the further sum of $15,000 in cash.. Appellant testified that she managed her mother's business for many years, but the value of her services is not given. It is made manifest that such services occupied but a small portion of her time, as she was engaged in the regular employment of others. At best appellant is unable to show that the consideration for the transfer of the property to her exceeded one-half the value of the property; and in any event she has failed to convince us that the evidence preponderates against the finding that the consideration was grossly inadequate.

So far as the transfer depends upon the consideration of natural love and affection, it is to be treated merely as voluntary. (27 C. J. 527.) [13]

3. Relationship of the parties: While it is true that the mere fact of the relationship of parent and child existing between Mrs. McIntyre and Laura McIntyre is not a badge of fraud (*Wilson* v. *Harris,* above), it is the general rule that transactions between near relatives are subject to the most rigid scrutiny, and the fact of such relationship is to be considered with other evidence as reflecting the intention with which the transfer was made. (*Lambrecht* v. *Patten,* 15 Mont. 260, 38 Pac. 1063; *Shepherd* v. *First Nat. Bank,* 16 Mont. 24, 40 Pac. 67; 27 C. J. 495.) The rule and the reason for it are stated aptly by the supreme court of Virginia, as follows: "As fraud is generally accompanied by a secret trust, the debtor usually selects some person in whom he can repose secret confidence. And as this trust and confidence is more likely to exist between relatives, or those who occupy confidential relations, their transactions with each other, when fraud is charged, will be more closely scrutinized." (*Ford* v. *Chelf,* 112 Va. 98, 70 S. E. 500.) [14]

The record then presents the case as follows: Mrs. McIntyre, indebted to the bank and having property of the value exceeding $35,000 immediately available to the satisfaction of her indebtedness, transferred all of her property to her [15]

daughter for a consideration which did not exceed one-half its value, leaving the bank without any direct means of satisfying its claim. That these facts are sufficient from which to draw the inference of an intention on the part of Mrs. McIntyre to defraud the bank and to hinder and delay it in enforcing its claim, finds support in the authorities generally (27 C. J. 791); and under the circumstances of this case the same facts, coupled with the fact that Laura McIntyre had been her mother's confidential adviser and business manager for many years and was intimately familiar with her mother's business, afford ample grounds for the trial court's finding that appellant participated actively in perpetrating the fraud.

The fact that Laura McIntyre was her mother's creditor at [16] the time the transfer was made does not militate against the finding. While it may be stated broadly that a debtor is at liberty to prefer one creditor over another (sec. 8601, Rev. Codes), the general rule is that where he transfers to one creditor in payment of that debt property the value of which is greatly in excess of the debt, this circumstance is a badge of fraud affording strong evidence thereof (*Sukeforth* v. *Lord,* 87 Cal. 399, 25 Pac. 497; *Clark* v. *Bell,* 40 Tex. Civ. App. 39, 89 S. W. 38; *Reilly* v. *Barr,* 34 W. Va. 95, 11 S. E. 750), and *a fortiori,* when coupled with other circumstances such as the preferred creditor's knowledge of the debtor's insolvency and the fact that the debtor disposed of all his property (27 C. J. 537).

We do not find any reversible error in the record, and accordingly the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN and STARK concur.

MR. JUSTICE COOPER, being absent, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied September 9, 1924.