TOMCHECK, RESPONDENT, v. MARYLAND CASUALTY CO.,
APPELLANT.

(No. 5,865.)

(Submitted February 15, 1926.   Decided March 10, 1926.)

[244 Pac. 506.]

*Conversion — Sheriffs — Fraudulent     Transfers — Delivery —
Change of Possession—Jury  Question.*

Conversion—Sheriffs—Fraudulent Transfers—Delivery—What Sufficient.
1.  In an action against the surety on the official bond of a
sheriff for the conversion of an automobile sold under execution
by the latter, the mere fact that the automobile was sold by a
father (judgment debtor) to his daughter on one day and not de-
livered until the next did not render the sale void as fraudulent,
where delivery was impossible on the day of sale; and the ques-
tion whether, under the circumstances, delivery was made as soon
after the sale as practicable was for the jury's determination.

Same—Fraudulent Transfer—Immediate Delivery—Continued Change of
Possession—Conflict in Evidence—Jury Questions.
2.  Where the evidence, in an action in conversion to recover on
a sheriff's bond in which the defense was that the property seized
by the officer had been sold by the judgment debtor with the
intent to defraud the creditor, as to whether there was such an
immediate delivery and continued change of possession as to satisfy
the requirements of Section 8604, Revised Codes of 1921, was con-
flicting, the question was one for the jury to determine.

Appeal—Conflicting Evidence—Judgment Conclusive.
3.  Where the evidence is conflicting and the district court denied
a motion for a new trial, the supreme court will not disturb the
judgment.

[1] Fraudulent Conveyances, 27 C. J., sec. 328, p. 590, n. 82.
[2] Executions, 23 C. J., sec. 97, p. 351, n. 22.  Fraudulent Convey-
ances, 27 C. J., sec. 789, p. 841, n. 20.  Sheriffs and Constables, 35 Cyc.,
p. 1998, n. 79, 82.
[3] Appeal and Error, 4 C. J., sec. 2841, p. 866, n. 51.

*Appeal from District Court, Lewis and Clark County; W. H.
Poorman,  Judge.*

ACTION by Alice Tomcheck against the Maryland Casualty
Company.  Judgment for plaintiff and defendant appeals.
Affirmed.

*Mr. J. Miller Smith, Mr. Paul W. Smith* and *Mr. David R. Smith,* for Appellant, submitted a brief; *Mr. David R. Smith* argued the cause orally.

There is no evidence in the case showing that the outside world had notice that Alice Tomcheck owned the car. (*Stevens* v. *Irwin,* 15 Cal. 503, 76 Am. Dec. 500; *Taylor* v. *Malta Merc. Co.,* 47 Mont. 342, 350, 132 Pac. 549; *Stanley* v. *Robbins,* 36 Vt. 422; *Parker* v. *Kendrick,* 29 Vt. 388; *Harwood* v. *Hutchison,* 175 Ill. App. 602.)

There is no continued change of possession in this case, as against creditors of the vendor. (*Morris* v. *McLaughlin,* 25 Mont. 151, 64 Pac. 219, 220; *Puckett* v. *Hopkins et al.,* 63 Mont. 137, 206 Pac. 422; *Bartell* v. *Griffin,* 47 Colo. 569, 108 Pac. 171; *Chavez* v. *Haynie,* 75 Colo. 414, 225 Pac. 852, 853; *Israel* v. *Day,* 41 Colo. 52, 92 Pac. 698; *Western Mining Supply Co.* v. *Quinn,* 40 Mont. 156, 135 Am. St. Rep. 612, 20 Ann. Cas. 173, 28 L. R. A. (n. s.) 214, 105 Pac. 732.)

The evidence shows that if there was any attempted transfer made, it was made with the intent to defraud creditors. (*Security State Bank* v. *McIntyre,* 71 Mont. 186, 228 Pac. 618, 623; 27 C. J. 252, 515.)

The evidence shows that the alleged transfer, if made at all, was made in great haste. This is a badge of fraud. (*Bendetson* v. *Moody,* 100 Mich. 553, 59 N. W. 252; *Temple* v. *Smith,* 13 Neb. 513, 14 N. W. 527; *Milner* v. *Davis,* 65 Iowa, 265, 21 N. W. 599; *Gollober* v. *Martin,* 33 Kan. 252, 6 Pac. 267.)

The evidence shows that the alleged consideration for the car was inadequate. (*Milner* v. *Davis,* 65 Iowa, 265, 21 N. W. 599; *Cox* v. *Cox,* 39 Kan. 121, 17 Pac. 847; *Monessen Nat. Bank* v. *Lichtenstein,* 207 Pa. 187, 56 Atl. 405; *Dodson* v. *Cooper,* 50 Kan. 680, 32 Pac. 370.)

*Mr. Lester H. Loble* and *Mr. Hugh Adair,* for Respondent, submitted a brief; *Mr. Loble* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action in conversion, brought by the plaintiff against the Maryland · Casualty Company, as surety on the official bond of Thomas P. Sherlock, sheriff of Broadwater county. It is alleged that on November 3, 1924, the sheriff, in disregard of the plaintiff's ownership and claim thereof asserted to a certain Studebaker automobile, levied an execution upon the same, and thereafter sold it to satisfy a judgment entered in the district court of Lewis and Clark county, on June 2, 1922, in an action entitled *Leopold Dobler, Plaintiff,* v. *John Tomcik and Lizi Tomcik, Defendants.* Recovery of the sum of $2,350, the alleged value of the automobile, $25 for expenses incurred in pursuit thereof, with interest on the total sum from the third day of November, 1924, and costs of suit, were asked. By its answer the defendant denies the plaintiff's ownership of the automobile, and alleges that it was the property of John Tomcheck, and that if, before the levy of the execution, an attempted sale thereof was made to the plaintiff, it was without consideration and intended to delay and defraud the creditors of John Tomcheck. The plaintiff's reply denies the affirmative allegations of the answer. On issue thus joined the case was tried to a jury, which rendered a verdict in favor of the plaintiff for the sum of $2,350, together with interest from November 3, 1924. Judgment was regularly entered on the verdict on June 4, 1924, for the sum of $2,459.55, with interest and costs. A motion for a new trial was made and denied. The appeal is from the judgment.

The defendant assigns many alleged errors committed by the trial court, all of which are argued in a lengthy brief as reasons for the reversal of the judgment. We have given earnest and careful consideration to all such, and conclude that the only question presented deserving serious consideration in disposition of the appeal is whether the evidence is sufficient to sustain the verdict. Issue was joined by the plead-

ings as to whether John Tomcik and Lizi Tomcik are the same persons as John Tomcheck and Lizi Tomcheck. No proof was submitted upon the question.

It appears that during the month of October, 1924, the T. C. Power Motor Car Company of Helena sold chances on a "Studebaker Special Six," five-passenger coupé, to be raffled off at its place of business on Saturday night, November 1, 1924. John Tomcheck, who resided near the town of Winston in Broadwater county, and was there engaged in ranching, held the lucky number, as a result of having purchased a single ticket. He is a man over sixty years of age, and the father of several children. One of his sons, Steve Tomcheck, is married to the plaintiff in this case, and both she and other members of the Tomcheck family held tickets on the automobile raffle. Steve Tomcheck and his wife were then residing at Marysville, about twenty-three miles distant from the city of Helena, and on the night of the raffle, Saturday, November 1, 1924, at about ten minutes after 9, she was informed by the telephone operator at Marysville that her father-in-law, John Tomcheck, held the winning ticket on the automobile. Her husband was then conducting a pool-hall in Marysville, and she at once proceeded to his place of business and advised him of his father's good fortune. Shortly thereafter they left Marysville, driving a Studebaker automobile, and proceeded to the city of Helena, at which point they stopped at the Central Garage, there got some gasoline, and while it was being put in their car, the plaintiff telephoned the office of the "Helena Independent," a daily newspaper published in the city of Helena, for confirmation of the report that her father-in-law had been successful in winning the automobile so raffled. Having received assurances from that office that the report was correct, she then proceeded, together with her husband, towards the ranch property occupied by her father-in-law, located about a mile and a quarter from the town of Winston, east of Helena. Both the plaintiff and her husband had knowledge that the elder Tomcheck had purchased a band of 450 sheep near Helena, and

that he was to drive them to his ranch on that day, in consequence whereof, en route to Winston, they kept a sharp lookout for him after leaving the town of East Helena, and when near the Mountain View Ranch, at about 10:15 P. M., they observed near the road a band of sheep, it being a moonlight night, and upon approach thereto found that they were the elder Tomcheck's sheep and that he was then engaged in corralling them for the night at the Mountain View Ranch. The plaintiff and her husband thereupon conveyed to the elder Tomcheck the information that he was successful in winning the automobile in the raffle. The sheep having been corralled, the elder Tomcheck got into the automobile driven by the plaintiff and her husband, and they proceeded thence to the town of Winston, where they arrived about the hour of 11 o'clock. On the way the plaintiff negotiated with her father-in-law for the purchase of the automobile, which he had won, agreeing to pay him therefor the sum of $500, although the advertised retail value thereof was the sum of $2,350. An agreement was reached, and on arriving at Winston the party proceeded to the general store of George M. Meyers, who was a notary public, for the purpose of having him prepare a bill of sale to the car in consummation of the sale thereof to the plaintiff, but as the store was closed they called at his place of residence. Upon entering his house they met Mr. Meyers and his wife and John F. Lenahan, section foreman of the Northern Pacific railroad at Winston, and his wife Anna, the latter being a sister of the plaintiff. Mrs. Meyers was very ill at the time, and shortly thereafter died. Mr. Tomcheck, Sr., and Alice Tomcheck advised Mr. Meyers of their mission, and, as he was considerably disturbed over the condition of his wife, he merely gave directions to the plaintiff as to his idea of the proper terms to be employed in the preparation of a bill of sale to the car. He furnished the plaintiff with the necessary writing materials, and thereupon she sat down at the dining-room table in the Meyers house and prepared a bill of sale for the car, which was thereupon

signed by the elder Tomcheck, by his mark, and witnessed. It reads as follows:

"Winston, Montana, November 1st, 1924.

"For and in consideration of the sum of ($500) five hundred dollars paid to me in hand this first day of November in the year nineteen twenty-four, I, John Tomchek, do hereby sell, convey, and transfer to Alice F. Tomchek one Studebaker coupé automobile won by me from the T. C. Power Motor Co.

his

"JOHN  X  TOMCHEK.

mark

"Witness: J. F. LENAHAN.

"S. J. TOMCHEK."

The instrument was signed by John Tomcheck in the presence of each of the subscribing witnesses, who affixed their signatures thereto as witnesses to his signature at his request, the plaintiff also being present at the time of its execution. After being so executed, it was delivered to the plaintiff, who thereupon paid John Tomcheck in currency the sum of $500, which amount she obtained from her husband, the latter having upon his person at the time that amount of currency. It made rather a large roll, as it was composed of $20, $10 and $5 bills. Upon completion of this transaction, the plaintiff and her husband went to the John Tomcheck ranch near by, where they remained overnight, and the senior Tomcheck returned to his band of sheep.

Andy Tomcheck, another son of John Tomcheck, arrived on the scene, accompanied by his wife, in another Studebaker automobile, early the next morning. Thereafter Charles Tomcheck, the youngest son of John Tomcheck, who resided with his father on the ranch, and was then twenty years of age, accompanied by Andy Tomcheck in the latter's car, started to Helena for the purpose of obtaining from the T. C. Power Motor Car Company the automobile in question; the plaintiff having requested Charles Tomcheck to go to Helena and secure the car and deliver it to her at Winston. En route they

stopped where the sheep had been left the night previous, got the elder Tomcheck to join them, and the three then proceeded to Helena. They reached the place of business of the T. C. Power Motor Car Company at about 9 o'clock Sunday morning, presented the winning ticket, and thereupon the raffled automobile was delivered to Charles Tomcheck, who drove the same back to the Tomcheck ranch, riding therein alone. He reached there between 11 and 12 o'clock in the forenoon, and delivered the car to the plaintiff. John Tomcheck and Andy Tomcheck returned in the latter's automobile, and reached the ranch about the same time. A few minutes after the automobile was received by the plaintiff she drove it to Winston and back, accompanied by her two little boys and Mrs. Tomcheck, Sr. Later that day, in the afternoon, she again took her two children and her mother-in-law out for a second ride in the car, in company with Andy Tomcheck and his wife, and went almost to the Missouri River, a distance of four miles from the ranch, and returned before dark. Charlie also had the car out that afternoon for a short time, and was seen driving on the road near Winston, accompanied by his father, about 3 o'clock in the afternoon. Monday morning Charles Tomcheck borrowed the car from the plaintiff to make a business trip, and was seen near Townsend, driving the car on the road towards Winston, about half-past 1 in the afternoon. He returned to the ranch shortly thereafter, gave the car keys to the plaintiff, and left the car standing unlocked in the yard near the house. About half-past 2 o'clock the sheriff of Broadwater county, Thomas P. Sherlock, arrived at the ranch-house in a Ford car accompanied by another man. The plaintiff and Charlie were standing in the yard near the automobile in question, and the sheriff inquired of them the whereabouts of John Tomcheck, and was informed that he was thereabout somewhere. While waiting for the senior Tomcheck, the sheriff observed the new automobile and inquired whether it was the one which was won on the raffle, and, being informed that it was, said that he came to "attach it." About that time

the elder Tomcheck appeared, and the sheriff served papers on him. The plaintiff protested that the car did not belong to John Tomcheck, that she had made purchase thereof from him and had a bill of sale thereto which she offered to exhibit, but the sheriff said he was not interested. Her husband also participated in the conversation, and insisted that the sheriff should not take the car. During this parley the plaintiff gave the car keys to Charlie, who locked it up and handed the keys back to her. The sheriff, finding the car locked, sent the man who came with him away in their Ford car to get a wrecking car in order to tow the automobile in dispute to Townsend, and the sheriff then sat down on the running-board of the automobile which he was levying upon, awaiting developments. The plaintiff took another car and drove to Winston for legal advice, returning shortly, and told the sheriff that she would let him take the car provided he would let Charlie drive the car and accompany him to Townsend, and, after placing it in a garage under his keeping there, permit Charlie to lock it up and return the keys to her. Such arrangement, proving satisfactory to the sheriff, was fully carried out. Thereafter the plaintiff, in due time, regularly filed a third party claim to the car, and, as the execution creditor furnished the sheriff with a satisfactory indemnity bond, the car was subsequently sold on execution for the sum of $1,000, from the proceeds of which the judgment creditor was paid the amount of his judgment. There was no proof introduced as to the insolvency of John Tomcheck, and from the evidence it is shown that he owns 400 acres of land and a band of at least 450 sheep. It appears that both his land and sheep are mortgaged, but there is no showing made as to the value of either the land or the sheep, nor as to the amount of the mortgage indebtedness on either. While it is shown that he was indebted, neither the amount thereof nor the value of his property holdings were shown. There is dispute as to some of the facts, but the jury resolved the same in the plaintiff's favor.

[75 Mont. 557.]

Our statute provides: "Every transfer of personal property, other than a thing in action, or a ship or cargo at sea, or in a foreign port, and every lien thereon, other than a mortgage, when allowed by law, and a contract of bottomry or *respondentia,* is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any persons on whom his estate devolves in trust for the benefit of others than himself, and against purchasers or encumbrancers in good faith subsequent to the transfer." (Sec. 8604, Rev. Codes 1921.)

The fact that the automobile was sold on one day and not [1] delivered until the next does not render the sale void, where delivery was impossible on the day of the sale; and it is properly a question for the jury's determination, under the circumstances disclosed, whether delivery was made as soon after the sale as practicable. (*O'Gara* v. *Lowry,* 5 Mont. 427, 5 Pac. 583.) "In the determination of the question as to the kind of possession necessary to be given in order to make a sale of personal property valid as against creditors, regard must be had not only to the character of the property, but also to the nature of the transaction, the position of the parties, and the intended use of the property." (*Morris* v. *McLaughlin,* 25 Mont. 151, 64 Pac. 219.) And where the evidence is conflicting, it is for the jury to say whether there was such an [2] immediate delivery and continued change of possession as will satisfy the statute. (*Western Mining Supply Co.* v. *Melzner,* 48 Mont. 174, 136 Pac. 44.)

The defendant predicated its defense upon fraud in law under the statute above quoted, whereas the case of *Security State Bank* v. *McIntyre,* 71 Mont. 186, 228 Pac. 618, involved fraud in fact. The rules applicable are to be distinguished.

Without objection the jury were instructed as follows: "Every transfer of personal property, if made by a person having at the time possession or control of the property, and not accompanied by an immediate delivery and followed by an actual and continued change of possession of the thing transferred, is conclusively presumed to be fraudulent, and therefore void against those who are his creditors while he remains in possession. All of these three things—immediate delivery followed up by an actual and continued change of possession—are essential, and if there has been a failure of either of these three conditions, then such sale is conclusively presumed to be void against the creditors of the vendor." Also: "Before the plaintiff can recover in this action she must show to your satisfaction, by a preponderance of the evidence, that she made an actual *bona fide* purchase of the car on the night of November 1, 1924, and that the car had been actually delivered to her and an actual and continued change of possession had been made to her as soon as practicable and before the time the sheriff arrived and seized the said car, and that she was in possession of the car at the time of such seizure." And further: "You are instructed that if you believe from the evidence that John Tomchek did not sell or deliver the car described in the complaint to the plaintiff, Alice Tomchek, your verdict must be for the defendant."

These instructions fully and correctly covered the law applicable to the facts. The pleadings put in issue the possession and ownership of the automobile at the time it was levied upon. Clearly, the sheriff could not justify the seizure of the property of a stranger to the writ; and the plaintiff was entitled to recover upon a showing, satisfactory to the jury, that she had purchased the car and was the owner thereof when it was levied upon and taken away by the sheriff.

Both the trial court and the jury had the witnesses before [3] them, and were afforded opportunity to observe the manner in which they testified, as well as their demeanor upon the stand; and, in view of the conflict in the evidence and the

court's denial of the defendant's motion for a new trial, it is not within the province of this court to disturb the judgment. (*Bank of Commerce* v. *United States F. & G. Co.*, 58 Mont. 236, 194 Pac. 158.)

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY and STARK concur.

MR. JUSTICE MATTHEWS being disqualified did not hear the argument and takes no part in the foregoing opinion.